## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ANDERSON NEWS, LLC, | ) ) | Case No. 09-10695 (CSS) |
| Debtor. | ) ) ) | |
| ——————————————— | ) ) | |
| AMERICAN MEDIA, INC., BAUER MAGAZINE L.P., BAUER PUBLISHING COMPANY, L.P., HEINRICH BAUER NORTH AMERICA, INC., HEINRICH BAUER PUBLISHING, L.P., CURTIS CIRCULATION COMPANY, LLC, KABLE DISTRIBUTION SERVICES, INC., and TIME WARNER RETAIL SALES & MARKETING, INC., on behalf of ANDERSON NEWS, LLC, DEBTOR and DEBTOR IN POSSESSION | ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 11-53811 (CSS) |
| Plaintiffs, v. | ) ) ) | **Hearing Date:** September 21, 2012, 2:00 p.m. |
| ANDERSON MANAGEMENT SERVICES, INC., ANDERSON MEDIA CORPORATION, ANDERSON NEWS COMPANY SOUTHWEST, LLC, ANDERSON SERVICES, LLC, BROOKVALE HOLDINGS, LLC, DISPLAY SERVICES, INC., FIRST MEDIA CAPITAL CORPORATION, MSOLUTIONS, LLC, PROLOGIX DISTRIBUTION SERVICES EAST, LLC, and TWIN RIVERS TECHNOLOGY GROUP, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | **Objection Deadline:** September 13, 2012, 4:00 p.m. |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE ANDERSON DEFENDANTS TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE MAY 9, 2012 FIRST REQUEST FOR PRODUCTION OF DOCUMENTS SERVED ON THE PLAINTIFFS

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................................... 4

    i.  Service of the First Document Requests .......................................................... 4

    ii. Status of the Antitrust Action ......................................................................... 6

III. BASIS FOR REQUESTED RELIEF ........................................................................ 7

  A. Applicable Discovery Standard .......................................................................... 7

  B. The November 14, 2011 Rule 2004 Ruling Specifically Contemplated
     Discovery in this Adversary Proceeding .............................................................. 8

  C. Valuation of the Debtor for solvency purposes requires discovery of
     information relating to any antitrust violation that may have impaired the
     Debtor's income generating capacity, the Plaintiffs' credit analysis of the
     Debtor, and the Debtor's seven cent initiative ...................................................... 9

  D. Valuation of the Debtor for solvency purposes also requires discovery of
     information relating to the value of the Debtor's pending Antitrust Action ......... 15

    i.  The Antitrust Action has been identified by the Debtor as a prepetition
       asset and must be valued in determining solvency ......................................... 15

    ii. The timing of the Antitrust Action does not render it irrelevant as it
       was an asset of the estate at the time of several transfers and must be
       factored into the required Section 547 liquidation test ................................... 18

      a. Preference claims .................................................................................. 18

      b. Fraudulent transfer claims .................................................................... 19

  E. The Objecting Plaintiffs have failed to identify a basis for precluding the
     Anderson Defendants from pursing their solvency defense ........................... 22

    i.  The Objecting Plaintiffs cannot preclude information on the grounds of
       admissibility before an admissibility determination has been made .............. 22

    ii. The information currently available supports the admissibility of
        evidence relating to the Antitrust Action ........................................................ 23

F. The Objecting Plaintiffs are not able to avoid discovery in this case
    because of the pendency of the Antitrust Action before the New York
    District Court where they are Defendants ............................................................. 26

    i. There is no authority supporting the Plaintiffs' objection that because
      discovery here will parallel discovery in the Antitrust Action, the
      scope of discovery must be determined solely in the Antitrust Action .......... 26

    ii. Discovery in this Adversary Proceeding should proceed in tandem with
       discovery in the Antitrust Action or be stayed pending trial in the
       Antitrust Action ............................................................................................. 29

G. The Credit Files and Valuation Documents are also needed to rebut state
    law presumptions of insolvency ........................................................................... 32

H. The First Document Requests are not burdensome ............................................. 34

    i. The Objecting Plaintiffs are all parties that produced documents in the
      Source Interlink Antitrust Action ................................................................... 34

 I. The Other Objections to Production should also be overruled ............................... 37

IV. CONCLUSION ............................................................................................................ 39

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Am. Classic Voyages Co. v. J.P. Morgan Chase Bank (In re Am. Classic Voyages, Co.)*
    367 B.R. 500 (Bankr. D. Del 2007) ......................................................................12

*Anderson News, LLC v. Am. Media, Inc.,*
    680 F.3d 162 (2d Cir. 2012)...............................................................5, 6, 23, 25, 32

*Ashcroft v. Iqbal,*
    566 U.S. 662 (2009).............................................................................................22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................22

*Fiber-lite Corp. v. Molded Acoustical Prods. (In re Molded Acoustical Prods.),*
    150 B.R. 608 (E.D. Pa 1993) ..............................................................................19

*Hart v. Nationwide Mut. Fire Ins. Co.,*
    270 F.R.D. 166 (D. Del. 2010) .............................................................................8

*In re Advanced Telecomm. Networks,*
    490 F.3d 1325 (11th Cir. 2007) ................................................................16, 20, 24

*In re Am. Rehab & Physical Therapy,*
    No. 04-0847, 2006 WL 1997431 (Bankr. E.D. Pa. May 18, 2006)......................18

*In re Audre, Inc.,*
    202 B.R. 490 (Bankr. S.D. Cal. 1996) .................................................................17

*In re Bennett Funding Grp., Inc.,*
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ..................................................................31

*In re Capmark Fin. Grp. Inc.,*
    38 B.R. 471 (Bankr. D. Del. 2010) ......................................................................10

*In re Kane,*
    470 B.R. 902 (Bankr. S.D. Fla. 2012)............................................................17, 26

*In re Keenan,*
    201 B.R. 263 (Bankr. S.D. Cal. 1996) .................................................................16

*In re Washington Mut.,*

408 B.R. 45 (Bankr. D. Del. 2009) ........................................................................31

*In re Xonics Photochemical, Inc.,*
841 F.2d 198 (7th Cir. 1988) ...............................................................................16

*Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC),*
373 B.R. 283 (Bankr. S.D.N.Y. 2007) .............................................................10, 11

*Johnson Foils v. Huyck Corp.,*
61 F.R.D. 405 (N.D.N.Y. 1973)............................................................................31

*Loya v. Rapp (In re Loya),*
123 B.R. 338 (B.A.P. 9th Cir. 1991)....................................................................16

*Maloney v. Gordon,*
328 F.Supp.2d 508 (D. Del. 2004) .......................................................................27

*Metro. Prop. and Cas. Ins. Co. v. Advanced Spine Ctrs., Inc.,*
No. 07-10746, 2010 WL 1931324 (D. Mass. May 13, 2010) ...............................31

*Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,*
135 F.R.D. 101 (D.N.J. 1990)...............................................................7, 8, 15, 22

*Saunders v. City of Philadelphia,*
No. 97-3251, 1997 WL 400034 (E.D. Pa. July 11, 1994) ....................................27

*U. S. v. Hooker Chems & Plastics Corp.,*
90 F.R.D. 421 (W.D.N.Y. 1981)..................................................................3, 27, 30

*Williams v. Johnson & Johnson,*
50 F.R.D. 31 (S.D.N.Y. 1970) ..............................................................................31

## Statutes

Del. Code. Ann. tit. 6, Chapter 13, § 1302 .....................................13, 15, 19, 33

Del. Code. Ann. tit. 6, Chapter 13, § 1305 .............................................13, 19

11 U.S.C. § 547...............................................................................................15 18

11 U.S.C. § 548................................................................................19, 20, 21

## Rules

Fed.R.Bankr.P. 7026.............................................................................................7

Fed.R.Bankr.P. 7034.......................................................................................7, 37

Fed.R.Civ. P. 26 .................................................................................................................... 7

Fed.R.Civ.P.34 ................................................................................................................ 7, 34

Fed.R.Evid. 301 ................................................................................................................ 19

## Secondary Sources

Hon. Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr.
Inst. L. Rev. 1 (2012) ...................................................................................... 1, 10

## I.  INTRODUCTION

In the instant Adversary Proceeding, the Plaintiffs assert 16 causes of action in a Complaint that seeks to avoid numerous transfers made within the four-year period preceding the filing of the Debtor's involuntary bankruptcy case based upon bankruptcy and state law fraudulent conveyance claims and preference claims.    Solvency is an essential component of these claims and, therefore, the consideration of these claims will necessarily involve the introduction of evidence concerning: (1) the Debtor's course of dealings with creditors and (2) a valuation of the Debtor's assets and the Debtor's liabilities.  Valuation to determine solvency is an essential element of what is going to be tried in this case. *See* Hon. Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr. Inst. L. Rev. 1, 2, n.5 (2012).  Valuation includes discounting future cash flows, which entails assessments of the Debtor's financial projections and the reasonableness of the Debtor's projections.  The First Document Requests[1] go to those issues as is reflected in the three sample requests reprinted later in this Introduction.

In view of the evidence that will need to be introduced and addressed at trial to defend against hundreds of millions of dollars in alleged claims, the Anderson Defendants served the First Document Requests to obtain basic documents representing discoverable information readily available to the Plaintiffs and directly relevant to the underlying merits of the very claims the Plaintiffs assert.  The First Document Requests were comprised of 10 requests and can be categorized into three groups: (1) documents

---

[1]      Any capitalized term not defined herein shall have the meaning given to it in the attached Motion or the First Document Requests.

relating to the Antitrust Action (defined below) and the existence of an antitrust conspiracy between the Plaintiffs, (2) documents relating to the Plaintiffs' financial analysis of the Debtor, and (3) documents relating to a seven cent initiative proposed by the Debtor shortly before the involuntary petition.

The following three document requests are examples of what the Anderson Defendants are requesting.

> 2. *All Documents you produced in in connection with the Source Interlink Antitrust Case.*
>
> 4. *All Credit Files maintained, obtained, or created by the Plaintiffs related to Anderson News for the period from January 1, 2005 to March 2, 2009. As defined below, Credit Files include any Document or other Communication which reflects, relates or refers to the economic condition of Anderson News or your determination to extend credit or other financial accommodations to Anderson News or otherwise to do business with Anderson News.*
>
> 5. *All Documents that summarize or set forth the transactions between Anderson News and you, including but not limited to summaries of invoices, purchase orders, shipping documents, ledgers, credits, payments, and statements, that are dated between January 1, 2008 and the date of your production of documents in response to these Document Requests.*

The documents related to the Source Interlink Antitrust Action (defined below) were previously produced by the Plaintiffs (*see* Request No. 2 above). The Source Interlink Antitrust Action was initiated by a complaint alleging the same antitrust conspiracy that the Debtor alleges led to its shut down. This request goes directly to measuring the reasonableness of management's cash flow projections, which is an essential component of a discounted cash flow valuation, and in addition, to the value of the Debtor's litigation claim (a significant asset of the estate), and thus to solvency, a central issue in this preference and fraudulent conveyance case. The credit files and business dealings between the Plaintiffs and the Debtor (Requests Nos. 4 and 5) go to the Debtor's course of dealing with creditors and to solvency. The Objecting Plaintiffs have

refused to produce any documents responsive to the First Document Requests. The objections presented by the Objecting Plaintiffs are invalid.[2]  They argue that the Antitrust Action which (i) the Debtor has identified as the most valuable asset of the estate and (ii) impacts the evaluation of the Debtor's financial projections, has nothing to do with the Debtor's solvency, value, assets, or liabilities. As explained above and in detail below, the Antitrust Action is substantive and central to issues in this Adversary Proceeding. The Objecting Plaintiffs also argue that because they are defendants in the Antitrust Action brought by the Debtor, they cannot be required to provide discovery on the same facts in the Adversary Proceeding in which they are Plaintiffs. This is not the law. *See U. S. v. Hooker Chems & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981).[3]

In addition to not being the law, this unsupported contention by the Objecting Plaintiffs is unfair and unreasonable. The Objecting Plaintiffs would ask this Court to have the Anderson Defendants defend an alleged multi-hundred million dollar avoidance action without being able to obtain and present substantive evidence on two of the central

---

[2]    Bauer Magazine, L.P., Heinrich Bauer North America, Inc. and Heinrich Bauer Publishing, L.P. are not defendants in the Antitrust Action and therefore received only four documents requests.

[3]    As the Court explained:

> Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. *Accord, Parsons v. General Motors Corporation, supra*; *Patterson v. Ford Motor Co.*, 85 F.R.D. 152 (W.D.Tex.1980); *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y.1970). Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources. *Williams v. Johnson & Johnson, supra*, at 32.

*Hooker Chems.*, 90 F.R.D. at 426.

3

issues in the case: ***value and solvency***.

Without presenting any basis for the proposition, the Objecting Plaintiffs uniformly state that it is too burdensome to produce responsive documents, including documents already produced in the Source Interlink Antitrust Action. The Objecting Plaintiffs made this objection without any inquiry regarding the actual format, location, volume, etc. of their prior production. After request of the Anderson Defendants, AMI and Bauer declined to check to see what they had previously produced. The Anderson Defendants at least know that AMI produced 17,000 pages based on a prior Affirmation filed by AMI's counsel. While maintaining their objection, Curtis' counsel made an inquiry and confirmed that Curtis produced 3,175 pages, which primarily consisted of e-mails produced through a FTP (file transfer protocol) mechanism, a procedure that is not difficult to replicate.

The Objecting Plaintiffs' refusal to produce any responsive documents on these legally and factually unsupported grounds necessitates the instant Motion to Compel.

## II. **FACTUAL BACKGROUND**

### i. *Service of the First Document Requests*

1. On May 9, 2012, in the First Document Requests, the Anderson Defendants served ten requests for the production of documents on all of the Plaintiffs that are defendants in the Antitrust Action. The First Document Requests are attached as Exhibits 1 and 2 to the Declaration and Certification of Grant T. Stein (the "**Stein Declaration**"), attached hereto as Exhibit A. The First Document Requests can be categorized into three groups: (1) documents relating to the Antitrust Action and the existence of an antitrust conspiracy between the Plaintiffs, (2) documents relating to the

Plaintiffs' financial analysis of the Debtor, and (3) documents relating to a seven cent initiative proposed by the Debtor shortly before the involuntary petition.

2.     On June 8, 2012, the Objecting Plaintiffs, among the other Plaintiffs, served objections and responses to the First Document Requests.    The Objecting Plaintiffs' responses and objections to the First Document Requests are attached to the Stein Declaration as Exhibits 4 through 7.    In these responses and objections, the Objecting Plaintiffs objected to all ten of the Anderson Defendants' document requests and refused to produce any documents in response.[4]

3.     The Anderson Defendants and the Objecting Plaintiffs engaged in the required meet and confer conferences on their discovery disputes on June 29 (AMI and Bauer) and July 3, 2012 (Curtis), and a supplemental inquiry was made by the Anderson Defendants on August 20, 2012.    The Anderson Defendants' efforts to resolve the Objecting Plaintiffs' objections to the First Document Requests have not, however, been successful.  Stein Declaration ¶ 9.

4.     As noted below, on April 3, 2012, the United States Court of Appeals for the Second Circuit issued an opinion reversing and vacating the District Court's order dismissing the Antitrust Action, and thereby reinstating the case. *See Anderson News, LLC, v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012).  To provide an opportunity to address the impact of this decision on this case after requests for rehearing, rehearing *en banc*, and a request to stay the issuance of the mandate were filed and denied, the parties

---

[4]     With respect to Document Request No. 9 seeking documents concerning "possible investment or financial interest in, acquisition of, or the value or valuation of Anderson News for the period from January 1, 2003 through the date of your production of documents," AMI, Bauer and Curtis each represented that they had no such documents.

5

agreed that the Anderson Defendants' delay in filing a motion to compel arising out of the First Document Requests would not result in any prejudice to the Anderson Defendants. *See* Adv. Proc. D.I. 102 entered on July 27, 2012. The Mandate was issued on August 22, 2012.

5.      Efforts to reach an agreement with the extra time did not succeed.

6.      The Anderson Defendants are still in the process of working with Kable Distribution Services, Inc., and Time/Warner Retail Sales & Marketing, Inc. and thus they are not the subject of the instant Motion to Compel.

7.      The Anderson Defendants request that the Court compel the Objecting Plaintiffs—AMI, Bauer and Curtis—to produce all documents that are responsive to the First Document Requests.

        ii.     *Status of the Antitrust Action*

8.      On March 9, 2009, the Debtor filed an antitrust complaint against the Plaintiffs in the Southern District of New York Court (the "**Antitrust Action**") alleging that during January 2009 the Plaintiffs collusively acted to shut down the Debtor's business by collectively rejecting a seven cent initiative proposed by the Debtor and transferring their business to another book and magazine wholesaler.

9.      On April 3, 2012, the United States Court of Appeals for the Second Circuit issued an opinion reversing and vacating the District Court's order dismissing the Antitrust Action, and thereby reinstating the case. *See Anderson News, LLC, v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012).   The Plaintiffs filed a motion for reconsideration, a motion for an *en banc* panel hearing in the Second Circuit, and a motion to stay issuance of the mandate. The request for reconsideration, reconsideration

*en banc*, and motion to stay issuance of the mandate have all been denied. *See* D.I. 217, 223, 233, Case No. 10-4591, *Anderson News, L.L.C. v. American Media, Inc.*, before the United States Court of Appeals for the Second Circuit. The Mandate was issued on August 22, 2012. *See* D.I. 234, Case No. 10-4591 (Second Circuit).

## III. **BASIS FOR REQUESTED RELIEF**

### A. **Applicable Discovery Standard**

10.     The First Document Requests were served pursuant to Rule 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**") incorporated into this Adversary Proceeding by Rule 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Federal Rule 34(a) provides that "a party may serve on any other party a request within the scope of Rule 26(b)." Federal Rule 26(b)(1) states:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.
>
> Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

11.     Federal Rule 26(b) incorporates the liberal discovery policy of the Federal Rules and, accordingly, discovery falls within the confines of Federal Rule 26(b) if it seeks information that "would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

7

Additionally, "as long as the information sought is reasonably calculated to lead to the discovery of admissible evidence, it is discoverable, even if it is ultimately not admissible at trial." *Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 168 (D. Del. 2010).

12.    "The party resisting discovery has the burden of clarifying, explaining and supporting its objection." *Nestle Foods*, 135 F.R.D. at 104.    If this burden is satisfied "the burden remains on the discovering party to show that the information sought is relevant to the subject matter of the action." *Id.*

B.    **The November 14, 2011 Rule 2004 Ruling Specifically Contemplated Discovery in this Adversary Proceeding**

13.    The Objecting Plaintiffs have argued that the Court has already determined that discovery relating to the Antitrust Action is not permissible.    This contention is incorrect.

14.    Prior to the initiation of this Adversary Proceeding, Holston Asset Management, LLC ("**Holston**") and Northshore Capital, LLC ("**Northshore**"), entities related to the Debtor and the Anderson Defendants, filed a motion under Bankruptcy Rule 2004 seeking documents from the Plaintiffs that included documents relating to the Antitrust Action.  Bankr. D.I. 971.  Holston and Northshore sought these documents in connection with anticipated claim objections including equitable subordination claims. *See id.* ¶ 13.  The Court denied the 2004 request without prejudice.  Bankr. D.I. 1107.

15.    At the hearing on Holston and Northshore's 2004 request, the Bankruptcy Court stated that because distribution to unsecured creditors was unknown it was not appropriate to expend expenses on discovery at that time.  Specifically, the Bankruptcy Court explained:

Some of the – I agree that some of the requests are very narrowly tailored and

8

some of them, frankly, would probably be very easy to produce like the ledgers, etc. But because we simply don't know if this makes any sense to pursue at this time and because of the expense that would be involved, and because of the pending antitrust action on appeal, *and because of the upcoming lawsuit to be filed by the Magazine Creditors it's just not the right time to allow this discovery to go forward.* (emphasis added).

There will in all likelihood, I hope – well I don't know if all likelihood. There will, I hope, come a time when it makes sense because it will mean that unsecured creditors have a decent chance of being in the money. And obviously the Court is always in favor of maximizing the size of the pie. But right now we have a small pie and it just doesn't make sense to spend a lot of money carving up nothing.

November, 14, 2011 hearing transcript, pages, 30-31, Bankr. D.I. 1138. The Bankruptcy

Court acknowledged that the pending Antitrust Action and the anticipated filing of this

Adversary Proceeding complicated the Rule 2004 request and thus it did not make sense

to initiate discovery *on a potential claims objection* without an expected distribution to

unsecured creditors that would justify the expense.[5]

16.     The denial of the request to pursue Rule 2004 discovery for a potential

claims objection and equitable subordination claims in the Debtor's bankruptcy case is

wholly unrelated to the Anderson Defendants' pursuit of discovery to defend against

significant claims asserted by the Plaintiffs in this Adversary Proceeding.

C.     **Valuation of the Debtor for solvency purposes requires discovery of information relating to any antitrust violation that may have impaired the Debtor's income generating capacity, the Plaintiffs' credit analysis of the Debtor, and the Debtor's seven cent initiative**.

17.     The Debtor's alleged insolvency, and thus the value of the Debtor, is a

central legal and factual issue as it is an element that must be determined with respect to

---

[5]     Holston and Northshore sought interlocutory review of the Court's determination and voluntarily dismissed that request after the Second Circuit reinstated the Antitrust Action knowing that discovery of the merits and value of the Antitrust Action would take place in the context of the solvency determination in this case.

9

each count of the Complaint.

18.     To measure the value of a company, there are four commonly recognized methodologies: (1) asset based valuation, (2) discounted cash flow ("**DCF**"); (3) relative valuation approaches, including comparable company analysis and comparable transaction analysis, and (4) option pricing.   Hon. Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr. Inst. L. Rev. 1, 2 (2012).   Other methodologies may include actual sale price and market capitalization. *Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)*, 373 B.R. 283, 344 (Bankr. S.D.N.Y. 2007).

19.     Valuation experts often employ more than one methodology and DCF is considered to be one of the standard methodologies used to determine the value of debtors. Hon. Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr. Inst. L. Rev. 1, 2 (2012); *see also In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 497 (Bankr. D. Del. 2010) (solvency expert used adjusted balance sheet approach, comparable company analysis, and discounted cash flow analysis along with, as a cross check, option pricing with respect to the value of a guaranty); *Iridium*, 373 B.R. at 344 ("No rigid approach should be taken regarding fair valuation of a company within the context of solvency analysis, but rather courts should consider the totality of circumstances.").

20.     DCF involves evaluating a company's anticipated future cash flows and discounting these cash flows to present value. Hon. Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr. Inst. L. Rev. 1, 6 (2012). A key focus in a DCF analysis is the future cash flow that was expected around the relevant time and

whether a company's projections of future cash flow were reasonable. *See Iridium*, 373

B.R. at 347. In *Iridium*, the court explained:

> Another important part of the insolvency or unreasonably small capital
> analysis involves an evaluation of the debtor's own projections of future
> cash flows and whether those projections were "reasonable and prudent"
> when made. *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport
> Servs.*, 910 F.Supp. at 943 (expert analyses were correctly based on
> company projections which were determined to be reasonable; "[T]he
> question the Court must decide is *not* whether [the] projection was correct,
> for clearly it was not, but whether it was reasonable and prudent when
> made." (quoting *Credit Managers*, 629 F. Supp. at 184)); *Moody v. Sec.
> Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1076 (3d Cir. 1992) (upholding
> district court determination that based on a company's own projections,
> which it found to be reasonable, the company was not insolvent); *see also
> VFB*, 2005 WL 2234606, at *26, *29 n. 71 (D. Del. 2005) (projections
> created by expert unreasonable because they "fly in the face of what
> everyone involved in the spin-off believed at that time") *aff'd* 482 F.3d
> 624 (3d Cir. 2007).

*Id.*

21.    Document Request Nos. 1-4, 6-8 and 10 are relevant to this

reasonableness inquiry for several reasons. First, it is undisputed that over a period of

time leading up to January and February, 2009, the Debtor's financial outlook and

operations changed dramatically. During this period, the Debtor's management

implemented the seven cent initiative to improve the Debtor's income potential. As a

result, documents relating to the Debtor's seven cent initiative, and the reasonableness of

the future income projections based on the initiative, are necessary to determine the

Debtor's value as a going concern and solvency. *See, e.g.*, Examiner's Report Part I at 59

("The Debtor also modeled various pricing scenarios to gauge the effect a given

surcharge rate would have on its profitability.").[6] As discussed in additional detail below,

a number of transfers are impacted by the Debtor's solvency during the period

---

[6]    The Examiner's Report itself is not admissible in evidence.

11

surrounding January and February, 2009. As explained in *Iridium* the fact that the seven

cent initiative was ultimately unsuccessful does not begin or end the reasonableness

inquiry. This is particularly true here as the complaint in the Antitrust Action alleges

facts, that the Second Circuit Court of Appeals held are sufficient to defeat a motion to

dismiss, concerning an actual antitrust conspiracy to oppose the initiative and to put the

Debtor out of business. Thus, Document Request Nos. 1-4, 6-8, and 10 are focused on

recovering information relating to the reasonableness of the Debtor's projections, which

must include projections based on its seven cent initiative.

22.     Second, the documents requested from the Objecting Plaintiffs are

relevant to the reasonableness inquiry with respect to whether the Debtor's expected

performance under the seven cent initiative was reasonable and impaired only by the

antitrust conspiracy alleged by the Debtor. Analysis of an unexpected and intervening

event in valuing the debtor was found to be persuasive and appropriate in *In re American

Classic Voyages Co*. There, in the context of a preference action, the defendants'

solvency expert used a DCF analysis to conclude that despite historical unprofitability the

debtors had implemented several initiatives that changed their future cash flow outlook to

profitable. *Am. Classic Voyages Co. v. J.P. Morgan Chase Bank (In re Am. Classic

Voyages, Co.)* 367 B.R. 500, 512 (Bankr. D. Del 2007). But for the unexpected events

occurring on September 11, 2001, that irretrievably damaged the debtors' shipping

businesses, the debtors would each have likely continued as a going concern in

accordance with the debtors' projections. *Id.* at 512–13. The expert's analysis required

evaluation of whether the debtors' projections were reasonable at the time even though

they were ultimately out of line with the debtor's actual performance. The court held:

12

> The facts established here demonstrate that, while the Debtors had serious financial issues in early 2001, they had taken steps to address their financial challenges and, as of the Transfer Date, had reason to be optimistic about the future. The unforeseen events of September 11, 2001 dealt a fatal blow to their business. The evidence presented in this case supports the conclusion that the projections were reasonable when prepared.

*Id.* at 513. In accepting the analysis of the defendants' solvency expert, the court also found that considering the facts of the case, the asset based valuation of the plaintiffs' expert was not sufficiently comprehensive. *Id.* at 516.

23.     As major suppliers to the Debtor for decades with billions of dollars in business conducted in the years before bankruptcy, the Objecting Plaintiffs' internal analysis, communications and documents relating to the Debtor's credit and performance are relevant to the expected performance of the Debtor. The Plaintiffs were major suppliers of the Debtor that provided over six hundred million dollars in prepetition credit to the Debtor during the four years preceding the involuntary petition. Because the Debtor was a private company, there were limited credit rating reports aside from the Dun & Bradstreet reports and that evidence, assuming it would be admissible, would not have the probative value of the credit and payment history of the primary suppliers to the Debtor.

24.     The analysis of major suppliers and vendors regarding the Debtor's past payment history and its evaluation of the credit worthiness is also relevant to establishing the Debtor's course of dealing with its creditors, a necessary inquiry for solvency purposes under the Delaware UFTA. Section 1302(b) of the Delaware UFTA applies a presumption of insolvency to claims under Section 1305 if it is shown that the Debtor was generally not paying its debts at the time of a transfer. Information revealing the

13

Debtor's payment history with respect to the Debtor's major suppliers will thus bear on whether the Debtor was generally paying its debt at any time.

25.    The Examiner's Report details the significant amount of business between the Debtor and Plaintiffs during the years prior to bankruptcy. For example, the Examiner's Report includes a chart of prepetition payments to Plaintiff Time Warner (Examiner's Report 225–26) that reveal payments totaling $581,712,728 were made between January 1, 2006 and January 31, 2009. The Examiner also stated:

> The TWR payment history compels two significant observations. First the Debtor reduced its "EOM" (end of month) statement balance owed to TWR by approximately $50 million from approximately $136 million in January 2006 to approximately $78 million in January 2009. Moreover, in December 2008 – and approximately two weeks prior to the surcharge initiative announcement – the Debtor made a payment to TWR of approximately $20 million. A December 30, 2008 payment was the last made in 2008, a year in which the Debtor paid to TWR in excess of $175 million for amounts its owed.
>
> In similar fashion, the Debtor continued to make significant payments to its other creditors well into January 2009. By way of example, the Debtor paid Curtis approximately $16 million in December 2008 and January 2009. Significantly, the last payment made to Curtis on January 16, 2009 was made two days after the Debtor announced its surcharge initiative in the Single-Copy Interview.

26.    It is significant to note that the chart showing that Plaintiff Time Warner received payments totaling $581,712,728 between January 1, 2006 and January 31, 2009 was attached to a letter dated November 12, 2010 from Time Warner to the Examiner (Examiner's Report 225) that has never been produced to the Anderson Defendants because, other than documents produced by the Debtor, not a single document has been

produced to the Anderson Defendants.[7]

27.    As shown above, the First Document Requests are tailored to specifically recover information regarding the Plaintiffs' analysis of the Debtor's open account trade credit, the alleged antitrust conspiracy, and the Debtor's projections. A review of common valuation methodologies to assess solvency used in other cases demonstrates that the First Document Requests relate to information held admissible in similar contexts. Accordingly, the requested documents should be ordered to be produced.

### D. Valuation of the Debtor for solvency purposes also requires discovery of information relating to the value of the Debtor's pending Antitrust Action

  *i.*    *The Antitrust Action has been identified by the Debtor as a prepetition asset and must be valued in determining solvency.*

28.    Solvency may also be established through a balance sheet test analyzing the Debtor's assets and liabilities. *See* 11 U.S.C. § 547(f); Del. Code. Ann. tit. 6, Chapter 13, §1302(a). Discovery related to the Antitrust Action is information that "bears on, or that reasonably could lead to other matters that could bear on" analysis of the Debtor's liabilities and assets. *See Nestle Foods*, 135 F.R.D. at 104. The Debtor has identified the Antitrust Action as an asset and has received court approval for various measures and related expenditures incurred to pursue recovery from this asset. Further, similar litigation claims have been evaluated as assets for solvency purposes in other cases (see below). Document Request Nos. 1-3, 6-8 and 10 seek information necessary to value the

---

[7]    Every document given by the Anderson Defendants to the Examiner (other than documents designated as Antitrust Confidential) has already been produced to the Plaintiffs through the Rule 2004 discovery that was authorized by the Court for the Plaintiffs. There also are documents produced by Anderson News to the Examiner that Anderson News designated as "Antitrust Confidential" which have not been produced to the Plaintiffs. Anderson News is not a defendant in the Adversary Proceeding.

Antitrust Action for purposes of this Adversary Proceeding. The best evidence of the value of the Antitrust Action will be the actual result in the Antitrust Action. However, because the instant Adversary Proceeding is moving ahead before the Antitrust Action is concluded, substantive due process requires that the Anderson Defendants be able to investigate and present evidence about the merits and, thus, the value of the Antitrust Action.

29.     The Debtor listed the Antitrust Action as an asset as of the Petition Date in Schedule B of the Debtor's schedules. *See* Bankr. D.I. 271. The Debtor has also stated in numerous pleadings that it believes the Antitrust Action is the most valuable asset of the estate and the Court has approved the Debtor's retention of appellate counsel to continue pursuit of this asset. *See* Bankr. D.I. 48, ¶ 3 ("The Antitrust Action represents Anderson News' largest single remaining asset."); Bankr. D.I. 495, 580, 598 (application and approval of Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC as special litigation counsel).

30.     Some courts have held that pending litigation claims are contingent claims, others have held that they are non-contingent claims because the facts on which the claims are based have already occurred. In either circumstance, courts have consistently held that pending litigation claims should be valued for solvency purposes. *See In re Xonics Photochemical, Inc.,* 841 F.2d 198, 200 (7th Cir. 1988) (a contingent "asset or liability must be reduced to its present, or expected, value before a determination can be made whether the firm's assets exceed its liabilities"); *In re Advanced Telecomm. Networks*, 490 F.3d 1325 (11th Cir. 2007) (court should have valued contingent assets and liabilities for solvency purposes); *Loya v. Rapp (In re Loya)*,

123 B.R. 338, 340 n. 2 (B.A.P. 9th Cir. 1991) ("A tort claim ordinarily is not contingent as to liability…"); *In re Keenan*, 201 B.R. 263, 265 (Bankr. S.D. Cal. 1996) (prepetition tort claim is not contingent because "[i]f all events upon which a future determination of liability could be based have occurred prepetition, then the claim is not contingent, even though liability has yet to be fixed."); *In re Audre, Inc.*, 202 B.R. 490, 492 (Bankr. S.D. Cal. 1996) (same).

31.     In *In re Kane*, the court rejected a solvency analysis that failed to properly value a pending litigation claim against the debtor that the court held to be a contingent claim. 470 B.R. 902, 924 (Bankr. S.D. Fla. 2012). The court explained the proper way to determine the value of the litigation claim as the following excerpt shows:

> A review of the relevant case law, however, shows that courts rely not on the statistical probability of a win or loss, ***but on factors tending to show whether there was an actual likelihood of loss as well as the potential magnitude of that loss in the particular circumstances of the case***. This requires a detailed review of the specific litigation, ***the underlying facts***, how it was presented, and the like. While the Court received evidence with regard to the case presented in the State Court, Mr. Zucker did not consider these facts in reaching his conclusion on the value of the Plaintiffs' lawsuit.

*Id.* (emphasis added). Thus, whether contingent or fixed, pending litigation claims like the Antitrust Action are assets that cannot be disregarded in a solvency analysis and the Court must be presented with a detailed review of the issues underlying the litigation claim to complete the analysis. Not only must it be included, but to value the Antitrust Action the Plaintiffs' liability, damages and the ability to collect any judgment must be assessed.    With respect to valuation and solvency, percentages cannot simply be arbitrarily assigned to a range of possible outcomes as this would be speculative at best. Such probabilities must be premised on the assessment of the evidence. The only way to get this evidence is through court enforced discovery.

17

      ii.      *The timing of the Antitrust Action does not render it irrelevant as it was an asset of the estate at the time of several transfers and must be factored into the required Section 547 liquidation test.*

32.      During the meet and confers the Objecting Plaintiffs stated that they believe the Antitrust Action does not impact solvency because many of the alleged avoidable transfers attempted to be included in the Complaint purportedly occurred prior to the alleged antitrust conspiracy. This position by the Objecting Plaintiffs is factually and legally inaccurate as explained in the following paragraphs.

a.  Preference claims

33.      First, pursuant to Section 547(b)(5), a plaintiff cannot recover on a preference claim until the Debtor's assets and liabilities are evaluated in a Chapter 7 liquidation test. The statute provides:

547(b)(5) that enables such creditor to receive more than such creditor would receive if—

      (A) the case were a case under chapter 7 of this title;
      (B) the transfer had not been made; and
      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

34.      It is undisputed that the alleged antitrust conspiracy occurred prior to the Petition Date and the Debtor listed the Antitrust Action as a prepetition asset.

35.      Thus, for claims brought under Section 547, the Antitrust Action must be valued without regard to when the transfer occurred.

36.      Section 547(f) also creates a presumption of insolvency for 90 days prior to the Petition Date. The Anderson Defendants have the burden of rebutting this presumption. *See In re Am. Rehab & Physical Therapy*, No. 04-0847, 2006 WL 1997431, at *8 (Bankr. E.D. Pa. May 18, 2006) ("Therefore, [defendant] – who contests the claim of insolvency – must present sufficient evidence that the Debtor was solvent on

18

the date of the asset purchase to rebut the presumption created by section 547(f)"). This

rebuttal must be made through the presentation of probative evidence. In *In re Molded*

*Acoustical Products, Inc.,* the court explained:

> A creditor attempting to overcome the presumption of insolvency
> must come forward with "evidence sufficient to cast into doubt the
> statutory presumption of insolvency, i.e., that the debtor's assets
> exceeded its liabilities." *In re World Financial Services Center,*
> *Inc.,* 78 B.R. 239, 241 (9th Cir. BAP 1987), *aff'd,* 860 F.2d 1090
> (9th Cir.1988). Evidence constituting mere speculation as to
> whether the debtor was insolvent is not sufficient to rebut the
> presumption. *In re Emerald Oil Co.,* 695 F.2d 833, 838–39 (5th
> Cir.1983)."

*Fiber-lite Corp. v. Molded Acoustical Prods. (In re Molded Acoustical Prods.)* 150 B.R.

608, 614 (E.D. Pa 1993). *See also* Fed.R. Evid. 301 (A presumption imposes on the party

against whom it is directed the burden of going forward with evidence to rebut or meet

the presumption).

37.     While the presumption of insolvency only applies to transfers made in the

90 day pre-petition period and not the one year insider preference period, the necessity

for related information remains. Thus, the value of the Antitrust Action is a substantive

issue within the context of solvency in this case.

### b.  Fraudulent transfer claims

38.     The value of the Antitrust Action is also a component of solvency with

respect to several of the alleged fraudulent transfers.  Plaintiffs seek to recover fraudulent

transfers under Section 548 of the Bankruptcy Code and Section 1305 of the Delaware

UFTA, including several transfers made after the alleged antitrust events in January 2009.

Recovery under both of these provisions will require a solvency analysis.

39.     Sections 1305(a) and (b) of the Delaware UFTA require that the Debtor be

insolvent at the time of any transfer.

19

40.     As discussed earlier, Section 1302(b) of the Delaware UFTA also applies a presumption of insolvency to claims under Section 1305 if it is shown that the Debtor was generally not paying its debts at the time of a transfer. Thus, as to the transfers alleged to be fraudulent under the Delaware UFTA in the four years preceding the filing of the involuntary petition covering March 2, 2005 to March 1, 2009, it is necessary to address whether debts were being paid in the ordinary course to defeat any basis for the presumption of insolvency during that period.

41.     Here, because the Debtor had admitted that it was not generally paying its debts *as of February 2009* (*see* Bankr. D.I. 48, ¶ 3 (Debtor's answer to involuntary petition)), the value of the Antitrust Action will be crucial to rebutting a presumption of insolvency during the period after the alleged January 2009 antitrust events through the involuntary petition date and this is exactly what the discovery sought is directed toward. *In Advanced Telecommunications Networks*, the court dealt with a similar solvency presumption and explained:

> The bankruptcy court's presumptive insolvency finding shifted the burden to the [defendants] to show that [the debtor] was conclusively solvent under a balance sheet test: That is that the fair value of [the debtor's] assets exceeded the fair value of its debts, notwithstanding the fact that it had not paid its debts as they come due.

490 F.3d at 1333.

42.     The same issue exists with respect to the transfers sought under Section 548 of the Bankruptcy Code that were made after the antitrust events. Section 548(a)(B) of the Bankruptcy Code allows recovery of transfers in which (i) the Debtor did not receive reasonably equivalent value in return and (ii)(I) the Debtor was insolvent at the time, (II) was engaging in a transaction that would leave the Debtor with unreasonably small capital or (III) caused the debtor to incur debt beyond its ability to pay or (IV) was

to an insider out of the ordinary course under an employment contract.

43.    Here, for all transfers sought under Section 548 the Plaintiffs have chosen to use the insolvency element of Section 548(a)(B)(ii)(I) for recovery and for each transfer allege that the Debtor did not receive reasonably equivalent value in exchange and the Debtor was insolvent at the time.  The Plaintiffs' allegations are the same for transfers occurring after the antitrust events.  For example:

- Count I of the Complaint against Anderson Defendant FMC includes two payments made on February 4, 2009 and one payment made on February 5, 2009 and seeks to recover them under Section 1305(b) of the Delaware UFTA.  Complaint ¶ 52.  Plaintiffs allege the Debtor was insolvent at the time of these payments.  Complaint ¶ 47.

- Count III of the Complaint against Anderson Defendant FMC includes two payments made on February 4, 2009 and one payment on February 5, 2009 and seeks to recover these payments under Section 548 of the Bankruptcy Code and Section 1305(a) of the Delaware UFTA.  Complaint ¶ 77.  Plaintiffs allege that the transfers in Count III of the Complaint were made when the Debtor was insolvent.  Complaint ¶ 82.

- Count VIII of the Complaint against Anderson Defendant Anderson Services seeks to recover numerous transfers made in February 2009 under Section 1305(b) of the Delaware UFTA.  See Exhibit C to Complaint.  Plaintiffs allege that the Debtor was insolvent at the time of these transfers.  Complaint ¶ 134.

- Count XIII of the Complaint against Anderson Defendant Anderson News Southwest consists solely of a payment made on February 24, 2009.  Complaint ¶ 178; Exhibit D to Complaint.  Plaintiffs allege that the Debtor was insolvent at the time of the payment.  Complaint ¶ 180.

- Count XV of the Complaint against Anderson Defendant Display Services, Inc. includes a payment made on January 27, 2009 and February 17, 2009.  Complaint ¶ 201; Exhibit F to the Complaint.  Plaintiffs allege that the Debtor was insolvent at the time of these payments.  Complaint ¶ 203.

44.    For the transfers in Count XVI of the Complaint, the Plaintiffs again allege that the Debtor did not receive reasonably equivalent value and was insolvent at the time of all transfers in Count XVI.  Complaint ¶ 217.  However, the Plaintiffs do not

identify the date of the transfers or any other identifying information other than to indicate in paragraph 211 of the Complaint that the otherwise unidentified transfers in Count XVI occurred "[d]uring the four year period before the Petition Date." Thus, the Plaintiffs cannot contend that these transfers did not occur within the time period of the antitrust events without first identifying the transfer dates.

### E. The Objecting Plaintiffs have failed to identify a basis for precluding the Anderson Defendants from pursing their solvency defense

   i.    *The Objecting Plaintiffs cannot preclude information on the grounds of admissibility before an admissibility determination has been made.*

45.    There has been no determination that the evidence relating to the Antitrust Action is inadmissible, and that will not occur because it is clearly relevant, material, and probative in this case. It is obvious that the Antitrust Action is a valuable asset of the estate. Already millions of dollars have been spent on the Antitrust Action in recognition of the fact that it can result in the payment of all claims of creditors in full, plus generate a return to equity interest holders. The Second Circuit's decision clearly validates the fact that sufficient details were asserted in the Antitrust Action to meet the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009). While just as in this case, mere allegations are not evidence, discovery is necessary to establish the existence of and present evidence supporting those allegations. It is likely that such evidence will be admissible at trial in this case or lead to the discovery of admissible evidence for the reasons explained above.

46.    In *Nestle Foods*, the plaintiffs sought discovery regarding drafting history in the event that the language in the insurance policy at issue was later deemed ambiguous. 135 F.R.D. at 104. The defendants' categorically objected to discovery on

22

relevance grounds arguing that drafting history was irrelevant because there had been no determination that the language was ambiguous. The court held the plaintiff needed the discovery to explore whether there was a valid ambiguity claim and questioned "how can [the plaintiffs] be denied documents on grounds of inadmissibility before a court has ruled on the underlying issues?" *Id.* at 105. The court explained:

> The parties must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial. *Goldy v. Beal,* 91 F.R.D. 451, 454 (M.D.Pa.1981). Moreover, the question of relevancy is to be more loosely construed at the discovery stage than at the trial. Therefore, it is important to distinguish the right to obtain information by discovery from the right to use it at trial. *Leksi v. Federal Insurance Co.,* 129 F.R.D. 99, 104 (D.N.J.1989), citing, 8 Wright & Miller, *Federal Practice and Procedure,* §§ 2007, 2008.

*Id.* at 104.

47.    Similarly, here, the Anderson Defendants need and are entitled to discovery relating to the Antitrust Action to explore the value of the asset, whether the underlying antitrust events affected the Debtor's projections, and the resulting impact on the Debtor's solvency. Discovery on these solvency issues is needed so that the Court can make an admissibility determination on antitrust related evidence at the appropriate time. The case law and documents cited herein show that the Anderson Defendants have a basis to incorporate antitrust related information into their solvency analysis and solvency defense. Thus, the possibility (that always exists) that the Court may later hold that evidence relating to the Antitrust Action is inadmissible is not a valid basis to prevent discovery relating to these solvency issues now.

ii.    *The information currently available supports the admissibility of evidence relating to the Antitrust Action*

48.    The Objecting Plaintiffs have also advised the Anderson Defendants that

23

they do not believe the Antitrust Action has any merit. The Second Circuit disagreed. *See Anderson News, LLC, v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012). Even though the ultimate admissibility of evidence relating to the Antitrust Action is not the issue here, the current information available supports the Debtor's identification of the Antitrust Action as a legitimate and valuable asset. First, virtually the same allegations made by the Debtor were made in the Source Interlink Antitrust Action.[8] In fact, the allegations were so similar that certain of the Plaintiffs moved to disqualify the Debtor's antitrust counsel based on their previous representation of Source Interlink in the Source Interlink Antitrust Action, arguing:

> Because the Anderson Action is highly similar to the Source Action, it would be impossible for KBTF to represent Anderson, including advising it as to its settlement options, because of the firm's participation in the confidential negotiation of Source's settlements with ten defendants and KBTF's drafting of confidential settlement agreements including the one that resolved AMI's and Source's claims against each other.

Antitrust D.I. 37 at 10.

49. The Plaintiffs each settled with Source Interlink. Regardless of the Plaintiffs' reasons for settling, it is reasonable to assume that the Source Interlink

---

[8]    As this Court is aware, the Antitrust Action was initiated by the Debtor on March 9, 2009, and is based on the Plaintiffs' alleged conspiratorial acts during January 2009 in response to a seven cent initiative proposed by the Debtor. The Debtor's antitrust complaint followed initiation and settlement of a similar complaint filed by Source Interlink, Inc. ("**Source Interlink**") on February 9, 2009 in the United States District Court for the Southern District of New York, Case No. 1:09-cv-01152-PAC (the "**Source Interlink Antitrust Action**"). Source Interlink was another major magazine distributor and alleged that in response to its decision to also implement a seven cent initiative the Plaintiffs similarly sought to drive Source Interlink out of business. *See* Source Interlink Antitrust Action Complaint generally. Source Interlink obtained a temporary restraining order against Plaintiffs' collusive acts on February 12, 2009, shortly thereafter entered into confidential settlements with each of the Plaintiffs and is still in business. *See* Source Interlink Antitrust Action D.I. 22, 34, 49, 51, 61, 62.

24

Antitrust Action was of some value for multiple settlements to occur. *See In re Advanced Telecomm. Networks, Inc.*, 490 F.3d 1325, 1336 (11th Cir. 2007) (court failed to discount contingent liability to present value which could have been valued considering the amount of previous settlement offer).

50.    Second, the Second Circuit has determined that the Debtor's amended complaint states a plausible claim. *See Anderson News, LLC, v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012). The Plaintiffs' requests for reconsideration, reconsideration *en banc,* and to stay issuance of the Mandate have all been denied, and the Mandate was issued on August 22, 2012. *See* D.I. 217, 223, 233, 234, Case No. 10-4591, *Anderson News, L.L.C. v. Am. Media, Inc.*, before the United States Court of Appeals for the Second Circuit. The point is that the facts available, and not Plaintiffs' opinions, show that the Antitrust Action is a substantive claim. There is no basis to disregard the Antitrust Action as a valuable asset simply because the Plaintiffs disagree on its merits. The "unsecured creditors have a decent chance of being in the money" to use the Court's phrasing from the November 14, 2011 hearing. November, 14, 2011 hearing transcript, pages, 30-31, Bankr. D.I. 1138.

51.    It is not surprising that the Plaintiffs argue that an action against them has no merit. However, neither the Debtor nor the Anderson Defendants have been provided any discovery relating to the Antitrust Action. The value of the Antitrust Action cannot be disregarded solely based on Plaintiffs' collective opinions, which have already been proven wrong.[9]  Discovery relating to the Antitrust Action will be necessary for a

---

[9]    Plaintiffs Kable and Bauer also believed that it was a waste of time and estate expenses to allow the Debtor to retain appellate counsel to handle appeal of the order

determination to even be made on the admissibility of such evidence.

52.    Pursuing information relating to the Antitrust Action for solvency purposes is only fair in this circumstance to provide due process to the Anderson Defendants. *See In re Kane*, 470 B.R. at 924 (with respect to contingent litigation claim against the debtor the court stated "[t]he more material the contingent liability is to the solvency analysis, the more time and effort may be required to address the potential outcome viewed from the relevant date."). The actions of the Plaintiffs are central to this adversary proceeding as it is tied to the Debtor's solvency both before and after the Debtor shut down its operations. Accordingly, the information requested should be ordered to be produced in its entirety, other than where a valid privilege is properly asserted and established.

**F. The Objecting Plaintiffs are not able to avoid discovery in this case because of the pendency of the Antitrust Action before the New York District Court where they are Defendants.**

    *i.    There is no authority supporting the Plaintiffs' objection that because discovery here will parallel discovery in the Antitrust Action, the scope of discovery must be determined solely in the Antitrust Action.*

53.    The Objecting Plaintiffs have all argued that they cannot be required to produce antitrust related discovery in this Adversary Proceeding because all antitrust related discovery issues must be decided within the Antitrust Action. This is not the law. Here, the cases are different, the Anderson Defendants as parties are different, and the

___

dismissing the Antitrust Action. Bankr. D.I. 528. As explained above, appellate counsel was successful in having the Debtor's Antitrust Action reinstated. The erroneous assumptions in the limited objection underscore the importance of obtaining documents relating to the Antitrust Action so that the trier of fact in this case can make a determination of the probative value of the Antitrust Action based on the evidence available and not the personal opinions of the parties.

issues are different. Even in cases in which courts find that movement in a parallel proceeding based on the same facts could prejudice a party in the present proceeding, such as parallel civil and criminal trials, courts have only gone so far as to defer and not preclude discovery. *See Maloney v. Gordon*, 328 F.Supp.2d 508 (D. Del. 2004). Additionally, those cases are based on the conflicts caused by the application of different procedural rules in civil and criminal proceedings, a distinction that does not exist between the Antitrust Action and Adversary Proceeding, both of which are governed in accordance with the Federal Rules. *See Saunders v. City of Philadelphia*, No. 97-3251, 1997 WL 400034, at *6 (E.D. Pa. July 11, 1994) (courts have addressed a discovery stay in the face of parallel proceeding in order to "not to allow a civil litigant to discover through civil discovery what he could not get through criminal discovery.").

54.     Further, there is already an existing protective order (Bankr. D.I. 444) that precludes the use of discovery in the bankruptcy case from being used in the Antitrust Action.[10]   Clearly, it is inefficient for the Plaintiffs to be engaging in duplicative discovery in this case and the Antitrust Action, but as they have determined to prosecute this case, they cannot block a valid defense because the discovery will be parallel. In fact, because discovery will be going forward in the Antitrust Action, it makes logical

---

[10]     The overlap of discovery between the two cases, and the overlap of issues between the two cases, is patent. Damages in the Antitrust Action and solvency in the avoidance Adversary Proceeding are different sides of the same coin. In 2010 when the protective order was entered, (Bankr. D.I. 444), the Antitrust Action was in a motion to disqualify and motion to dismiss stage. Now that substantive discovery will proceed in the Antitrust Action, the basis for limiting discovery as between the Antitrust Action and the instant Adversary Proceeding no longer exists, if it ever did. *See U. S. v. Hooker Chems. & Plastics Corp.*, 90 F.R.D. at 426 ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure.")

sense for every document produced in that case to be produced in this case in the exact same way that every document provided to the Examiner was also provided to the Plaintiffs in this case as part of their Rule 2004 discovery.

55.    The impact of discovery of the Antitrust Action during the pendency of the Antitrust Action has been raised and recognized by all parties prior to this Adversary Proceeding.    The Plaintiffs' have continually rejected any argument that pursuing this Adversary Proceeding could cause potential harm through overlap with the Antitrust Action.

56.    In their pleadings seeking derivative standing to pursue these claims, the Plaintiffs rejected any concern over the impact of determinations in dual proceedings with respect to this Adversary Proceeding and the Antitrust Action, stating:

> Holston/Northshore suggest that there is a risk that a finding with respect to solvency in the bankruptcy case may have a collateral impact in the Antitrust Action, if the Debtor's appeal is successful. But even assuming that this is true (and it is not certain that it is), what is the concern? *__The Debtor's solvency will have to be litigated somewhere.    The Debtor utterly fails to explain why it doesn't want that litigation to occur in the bankruptcy court.__*

Bankr. D.I. 1056, ¶ 40 (emphasis added).

> In contrast, the Magazine Creditors are not seeking to stay the antitrust appeal. It is proceeding apace. The Magazine Creditors argue, logically, that the antitrust claim and the insider claims should proceed simultaneously…

> The Debtor purports to be concerned that adverse findings on the financial condition of the Debtor in the avoidance actions could have preclusive effect in the antitrust claim. No further elucidation of this purported concern is provided and it is hardly a justification for not pursuing claims against the insiders. The facts of the Debtor's financial condition are what they are.

Bankr. D.I. 921, ¶ 29, fn. 6.

57.    The Plaintiffs were granted derivative standing after the Debtor declined to immediately prosecute the claims in this Adversary Proceeding until further progress

was made in the Antitrust Action, though the Debtor had protected the estate through receipt of tolling agreements as approved by the Bankruptcy Court. The Debtor explained that issues regarding the Antitrust Action would have to be tried in the Adversary Proceeding and could possibly have preclusive effect on the determinations to be made in the Antitrust Action. The Plaintiffs argued that deferring prosecution on this basis was unjustifiable. *See* Bankr. D.I. 921, ¶ 29.

58.     In objecting to the Plaintiffs' request for derivative standing, the Debtor stated:

> The Debtor has made the reasoned judgment to delay the pursuit of the claims against the Insider Defendants pending further developments in the Antitrust Action and to build upon the work of the Examiner…Moreover, the Debtor has concern that prosecution of the Avoidance Action Claims could adversely impact the Antitrust Action since, among other things, rulings and arguments made in pursuit of the Avoidance Action Claims regarding the Debtor's financial condition could have preclusive effect in the Antitrust Action.

Bankr. D. I. 911, ¶¶ 28, 30.

59.     As the Plaintiffs argued to this Court: "***The Debtor's solvency will have to be litigated somewhere.***" It should be litigated in a place where the full and complete evidentiary record is established, and if the Plaintiffs want to proceed in this Adversary Proceeding and in the Antitrust Action at the same time, the full truth and the full evidentiary record should be available in both proceedings for the respective juries to consider. The Plaintiffs are defendants in the Antitrust Action which was filed more than two and a half years before the Adversary Proceeding was filed.

> ii. *Discovery in this Adversary Proceeding should proceed in tandem with discovery in the Antitrust Action or be stayed pending trial in the Antitrust Action.*

60.     The Plaintiffs cannot have it both ways. The Debtor's financial condition is relevant to the solvency issue in this Adversary Proceeding and the impact of a

conspiracy on the Debtor's business in the Antitrust Action. Thus, the First Document Requests seek documents for solvency purposes that likely will also be the subject of discovery in the Antitrust Action. Consequently, the Objecting Plaintiffs argue that these requests "seek[] discovery that relates only to the Antitrust Action, and the scope and timing of such discovery should be determined by the U.S. District Court for the Southern District of New York if and when the lawsuit is remanded to that court."

61.    The Plaintiffs cannot justifiably push to move the Adversary Proceeding ahead of the Antitrust Action but, at the same time, argue that any discovery relating to the Antitrust Action must first take place in that action. As noted above, as occurred with the Examiner's examination, where every document given to the Examiner was simultaneously produced for the Plaintiffs, the discovery should proceed in tandem. The Anderson Defendants have always recognized the overlap that would result if the Adversary Proceeding was not delayed until conclusion of the Antitrust Action. The Anderson Defendants entered into tolling agreements to defer this Adversary Proceeding and avoid this exact issue. But now that the Adversary Proceeding has been initiated and the Antitrust Action will also likely proceed to discovery, it should occur simultaneously. The Plaintiffs cannot impair the Anderson Defendants' ability to defend against claims based on overlap concerns.

62.    Courts have had to address overlap of discovery in pending proceedings in the bankruptcy context because of the use of Rule 2004 discovery, and outside of bankruptcy. While overlap makes discovery issues more complicated, there is certainly no *per se* bar to discovery based on the pendency of a related proceeding. For example, in *U. S. v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. at 426, the Court explained as

follows:

> Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order. Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. *Accord, Parsons v. General Motors Corporation, supra*; *Patterson v. Ford Motor Co.*, 85 F.R.D. 152 (W.D.Tex.1980); *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y.1970). Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources. *Williams v. Johnson & Johnson, supra*, at 32.

*See also Metro. Prop. and Cas. Ins. Co. v. Advanced Spine Ctrs., Inc.,* No. 07-10746, 2010 WL 1931324, at *4 (D. Mass. May 13, 2010) ("As an initial matter, the fact that Attorney Gaimari and his clients are seeking in the state court cases discovery of material that is relevant to this case or was prepared in connection with this case does not in any way suggest that the defendants are attempting to circumvent the applicable discovery deadline or are otherwise engaged in foul play."); *Johnson Foils v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973) ("federal courts do allow full use of the information in other forums."); *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970) ("there is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only.").

63.    Similarly in *In re Washington Mutual*, 408 B.R. 45, 53 (Bankr. D. Del. 2009), in the Rule 2004 context, the court ruled that the potential overlap of discovery with a pending proceeding was not relevant because the party seeking discovery was not a party to the pending proceeding. *See also In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996).

64.    The Objecting Plaintiffs argue that the First Document Requests "seek[]

31

discovery that relates only to the Antitrust Action, and the scope and timing of such discovery should be determined by the U.S. District Court for the Southern District of New York if and when the lawsuit is remanded to that court." Thus, while the Antitrust Action has been reinstated by *Anderson News, LLC, v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012), and the requests for reconsideration, reconsideration *en banc*, and to stay the Mandate have been denied, and the Mandate has been issued, this does not mean that the District Court in New York should now control discovery in this case. These are different cases involving different parties before different courts with different schedules and availability and, likely, will be subject to somewhat different discovery schedules. Though there is clear factual overlap between the cases because value, damages, and solvency are central in both, they are not the same. The cases cited above establish that the existence of overlapping discovery does not bar or limit discovery in the Adversary Proceeding. Also as noted above, because the Plaintiffs want the New York District Court to control discovery in this case, at least as a preliminary matter, all documents produced by the Defendants in the Antitrust Action (the Plaintiffs in the Adversary Proceeding) should be simultaneously produced in this case.

65.     Here, the Plaintiffs are moving forward with their insolvency allegations regardless of the status of discovery in the Antitrust Action and, as long as this is the case, the Anderson Defendants must be allowed to fully defend against these allegations without having their hands tied.

G. **The Credit Files and Valuation Documents are also needed to rebut state law presumptions of insolvency**

66.     The credit files and valuation documents of the Plaintiffs for several years prior to the Petition Date are relevant to the four year fraudulent conveyance period

which begins as of March 2, 2009, and rebutting the presumption of insolvency under

Delaware law. Document Request Nos. 4 and 9 request this information.[11]  Pursuant to

Section 1302(b) of the Delaware UFTA, if it is shown that the Debtor was not generally

paying its debts as due at the time of any transfer the Debtor is presumed insolvent unless

the Anderson Defendants can produce evidence to rebut this presumption.  The Debtor

has already admitted that it was not generally paying its debts as due during February

2009, but has denied that for all other periods.

    67.    As discussed above, the Plaintiffs were large suppliers of the Debtor

throughout the time of all transfers in the Complaint and provided the Debtor hundreds of

millions of dollars of trade credit through sales on open account during the relevant time

periods.   Thus, the Plaintiffs' files will certainly have substantive and probative

information relating to several aspects of solvency necessary to address the question of

whether debts were being paid in the ordinary course and thus preclude the creation of a

presumption under Section 1302(b).

    68.    The Objecting Plaintiffs have objected to production of their credit files

and any valuation documents primarily on relevance grounds.    The information is

---

[11]    **Document Request No. 4**: All Credit Files maintained, obtained, or created by
the Plaintiffs related to Anderson News for the period from January 1, 2005 to March 2,
2009.  As defined below, Credit Files include any Document or other Communication
which reflects, relates or refers to the economic condition of Anderson News or your
determination to extend credit or other financial accommodations to Anderson News or
otherwise to do business with Anderson News.

**Document Request No. 5**: All Documents that summarize or set forth the
transactions between Anderson News and you, including but not limited to summaries of
invoices, purchase orders, shipping documents, ledgers, credits, payments, and
statements, that are dated between January 1, 2008 and the date of your production of
documents in response to these Document Requests.

relevant and likely will lead to the discovery of admissible evidence. First, because the Plaintiffs' were the largest suppliers of the Debtor, the Plaintiffs' credit files will have information relevant to show the Debtor's credit and payment history with the Plaintiffs. This information is relevant to whether the Debtor was paying its debts as they came due in the ordinary course of business.

69.     Second, any credit analysis completed by a Plaintiff in connection with the issuance of credit to the Debtor or other information used by Plaintiffs as basis for their decision to continue their multi-million dollar business with the Debtor for years is relevant to the same solvency issues.

70.     During the conferences and in their written objections, the Objecting Plaintiffs have also argued that these documents do not need to be produced because the Debtor should also have these documents. This is not correct because the Debtor would not have the Plaintiffs' internal business records, files, e-mails, and credit analyses and, of course, the Debtor is not a Defendant in this Adversary Proceeding. This is thus not a sufficient basis for a refusal to produce any documents.

71.     Additionally, pursuant to Federal Rule 34(a)(1) the Plaintiffs must produce what is in their possession, custody and control. The fact that the Debtor may possess a few duplicate documents or even similar information is not an exception to this requirement.

H. **The First Document Requests are not burdensome**

   i. *The Objecting Plaintiffs are all parties that produced documents in the Source Interlink Antitrust Action*

72.     It is not burdensome for the Objecting Plaintiffs to produce what they have already produced in the Source Interlink Antitrust Action. Similarly, as they are all about

34

to produce documents in the Antitrust Action, it is not burdensome for them to engage in a simultaneous production of what they produce in that case either, exactly as was done in connection with the prior Rule 2004 discovery from the Plaintiffs in the bankruptcy case. Because the Source Interlink Antitrust Action involved virtually the same allegations against Plaintiffs, the Anderson Defendants sought to narrow the requested documents by asking for re-production of documents produced in the Source Interlink Antitrust Action instead of requesting that Plaintiffs spend time and expense on another production that targets the same aspects.

73.    The Source Interlink Antitrust Action and the Antitrust Action are based on allegations so similar that the Plaintiffs in this case unsuccessfully moved to disqualify the Debtor's antitrust counsel. The argument rejected by the District Court was that the Debtor's antitrust counsel had acted unethically and should be disqualified because it was the same antitrust counsel that handled the Source Interlink Antitrust Action and allegedly knew of the substance of the confidential settlements in that case and what documents were produced in that case. *See* Antitrust Action D. I. 35.

74.    In support of its motion to disqualify, AMI's counsel filed an affirmation (the "**AMI Affirmation**") (Antitrust Action D.I. 36; Exhibit 3 attached to the Stein Declaration filed contemporaneously herewith) stating that AMI produced 17,000 pages of documents in the Source Interlink Antitrust Action and that the other Objecting Plaintiffs—Bauer and Curtis—produced thousands of pages of documents to Source Interlink. *See* AMI Affirmation ¶¶ 4, 12. It is clear that the three Objecting Plaintiffs have already produced antitrust related documents.

75.    AMI refused to provide any information about the 17,000 pages of

documents it produced. It would not describe how they were produced (electronically or by hard copy), or whether they were primarily composed of e-mails or other documents given the narrow time range covered.

76.   Unlike AMI, Curtis advised that it produced 3,175 pages in the Source Interlink Antitrust Action, primarily composed of e-mails, and that these documents were produced through use of a FTP (file transfer protocol) mechanism.

77.   Bauer, as did AMI, refused to provide any information about how their documents were produced (electronically or by hard copy), or whether they were primarily composed of emails.

78.   Plus, based on the meet and confers, it is believed that the documents produced covered a very narrow time frame that was focused on the core of the antitrust conspiracy. The document request is highly focused and is not a 'fishing expedition".

79.   Production here of what has already been produced is not burdensome, and even if it were, the Plaintiffs are bringing claims against the Anderson Defendants for hundreds of millions of dollars of transfers. They have obtained the ability to do so from this Court, and with that authority comes the duty to cooperate in discovery to produce relevant materials. What is incredible is that for AMI and Bauer who have absolutely no idea what they produced (during the meet and confer AMI said it was a "handful of documents" despite the AMI Affirmation indicating it was 17,000 pages, and Bauer similarly did not investigate and thus does not know, and could not say, what was involved with re-producing the initial limited production in the Source Interlink Antitrust Action), they nonetheless presented objections on the basis of alleged burdensomeness and expense. As discussed above, Curtis made the same objection but was candid during

the meet and confer as to the scope of its actual production.

I.    **The Other Objections to Production should also be overruled**.

80.    The Objecting Plaintiffs have also made general objections applicable to each Document Request.  The Objecting Plaintiffs generally object to the extent that any Document Request is (i) not limited to a reasonable range of dates, (ii) vague and ambiguous, (iii) beyond the scope of or obligations imposed by applicable Bankruptcy Rules, (iv) subject to privilege log requirements beyond that required by applicable Bankruptcy Rules, (v) seeking production of documents outside the Objecting Plaintiffs' possession, custody or control, (vi) seeking privileged information or (vii) seeking private or confidential information.

81.    These objections should be overruled.  With respect to the objections based on compliance with applicable Bankruptcy Rules, the First Document Requests specifically state that production is to be made in accordance with Bankruptcy Rules 7026 and 7034.  The Objecting Plaintiffs do not identify any Document Request that is inconsistent with these rules.  The phrase they use throughout is "to the extent that . . . . " With respect to any documents withheld on the basis of privilege, a privilege log will be provided.

82.    With respect to documents not in the Objecting Plaintiffs' possession, custody and control, the Objecting Plaintiffs have not identified any Document Request that seeks such documents.  As noted above, the Objecting Plaintiffs claim that the Debtor has duplicate credit documents but even if true (and the Objecting Plaintiffs did not actually have knowledge that the Debtor has the requested documents) this does not obviate the Objecting Plaintiffs' requirement to produce what is in their possession,

37

custody and control. The Anderson Defendants are not the Debtor, and it is false and without basis to allege or imply that the Debtor or the Anderson Defendants have the Plaintiffs' files.

83.    With respect to alleged private and confidential documents of the Objecting Plaintiffs, if documents showing an actual antitrust conspiracy are what they contend are *private and confidential*, that is not legitimate and there is no basis for such a contention. The current protective order in place in the Bankruptcy Case already allows for designation of a document as being confidential, and Del. Bankr. L.R. 9018-1 also provides for confidentiality if the existing order is not determined to be applicable to the Adversary Proceeding.    In summary, the totally unsupported contention that any document at issue is private and confidential is not impaired and is not a basis on which to withhold production.

84.    With respect to the date ranges in the Document Requests, all except Document Request No. 9 are limited to the months surrounding the seven cent initiative, which relates to the solvency issues discussed above, and/or the four years prior to the Petition Date, which relates to the burdens and presumptions associated with the fraudulent transfers the Plaintiffs seek over this same four year period.    Document Request No. 9 requests valuation documents going back six years prior to the Petition Date based on the Anderson Defendants' knowledge that at least one Plaintiff has valuation documents at that time.

85.    Finally, the Objecting Plaintiffs do not identify what Document Requests, if any, are purportedly vague and ambiguous, and again use the phrase "to the extent that . . . . ." There is nothing vague or ambiguous in any of the Document Requests that have

been identified by the Objecting Plaintiffs in their objections or during the meet and confers.

## IV. CONCLUSION

The First Document Requests target key information that is needed for solvency purposes based on established methodologies accepted in bankruptcy cases in similar contexts. The pendency of the Antitrust Action, initiated long before this Adversary Proceeding, or the fact that some of the same documents may be needed in the Antitrust Action, does not create any recognized legal or equitable grounds to limit access to discovery that would otherwise be available to the Anderson Defendants. The other objections are similarly invalid. Thus, the Objecting Plaintiffs should be ordered to produce the documents responsive to the First Document Requests without further delay.

Respectfully submitted, this __ day of August, 2012.

KLEHR HARRISON HARVEY                    -and-
BRANZBURG LLP
                                         ALSTON & BIRD LLP
_____          Grant T. Stein
Domenic E. Pacitti (DE Bar No. 3989)     David A. Wender
919 Market Street, Suite 1000            1201 West Peachtree Street
Wilmington, DE 19801                     Atlanta, Georgia, 30309
Telephone: (302) 426-1189                Telephone: (404) 881-7000
Facsimile: (302) 426-9193                Facsimile: (404) 881-7777
dpacitti@klehr.com

Morton R. Branzburg                      *Counsel to Anderson Media Corporation,*
1835 Market Street, Suite 1400           *Anderson News Company Southwest, LLC,*
Philadelphia, PA 19103                   *Anderson Services, LLC, Brookvale Holdings,*
Telephone: (215) 568-6060                *LLC, and First Media Capital Corporation*
Facsimile: (215) 568-6603
mbranzburg@klehr.com

been identified by the Objecting Plaintiffs in their objections or during the meet and confers.

## IV. CONCLUSION

The First Document Requests target key information that is needed for solvency purposes based on established methodologies accepted in bankruptcy cases in similar contexts. The pendency of the Antitrust Action, initiated long before this Adversary Proceeding, or the fact that some of the same documents may be needed in the Antitrust Action, does not create any recognized legal or equitable grounds to limit access to discovery that would otherwise be available to the Anderson Defendants. The other objections are similarly invalid. Thus, the Objecting Plaintiffs should be ordered to produce the documents responsive to the First Document Requests without further delay.

Respectfully submitted, this 30th day of August, 2012.

KLEHR HARRISON HARVEY
BRANZBURG LLP
*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
dpacitti@klehr.com

Morton R. Branzburg
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 568-6060
Facsimile: (215) 568-6603
mbranzburg@klehr.com

-and-

ALSTON & BIRD LLP
Grant T. Stein
David A. Wender
1201 West Peachtree Street
Atlanta, Georgia, 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel to Anderson Media Corporation,*
*Anderson News Company Southwest, LLC,*
*Anderson Services, LLC, Brookvale Holdings,*
*LLC, and First Media Capital Corporation*