## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ANDERSON NEWS, LLC, | ) |
| | ) Case No. 09-10695 (CSS) |
| Debtor. | ) |
| | ) |
| | ) |
| AMERICAN MEDIA, INC., BAUER | ) |
| MAGAZINE L.P., BAUER PUBLISHING | ) |
| COMPANY, L.P., HEINRICH BAUER | ) |
| NORTH AMERICA, INC., HEINRICH | ) |
| BAUER PUBLISHING, L.P., CURTIS | ) |
| CIRCULATION COMPANY, LLC, KABLE | ) Adv. Proc. No. 11-53811 |
| DISTRIBUTION SERVICES, INC., and | ) |
| TIME WARNER RETAIL SALES & | ) |
| MARKETING, INC., on behalf of | ) |
| ANDERSON NEWS, LLC, DEBTOR and | ) |
| DEBTOR IN POSSESSION | ) |
| | ) |
| Plaintiffs, | ) **Related Documents:  D.I. 208, 209, 210, 211** |
| | ) **215** |
| v. | ) |
| | ) |
| ANDERSON MANAGEMENT SERVICES, | ) |
| INC., ANDERSON MEDIA | ) |
| CORPORATION, ANDERSON NEWS | ) **Objection Deadline:  October 15, 2019** |
| COMPANY SOUTHWEST, LLC, | )                               **at 4:00 p.m.** |
| ANDERSON SERVICES, LLC, | ) |
| BROOKVALE HOLDINGS, LLC, | ) **Hearing Date:  TBD** |
| DISPLAY SERVICES, INC., FIRST | ) |
| MEDIA CAPITAL CORPORATION, | ) |
| MSOLUTIONS, LLC, PROLOGIX | ) |
| DISTRIBUTION SERVICES EAST, LLC, | ) |
| and TWIN RIVERS TECHNOLOGY | ) |
| GROUP, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF THE RENEWED
## MOTION TO COMPEL WITH RESPECT TO THE
## PLAINTIFFS' JULY 7, 2014 DISCOVERY RESPONSES

Anderson Media Corporation ("**AMC**") and First Media Capital Corporation ("**FMC**") (jointly, the "**Movants**")[1] file this Memorandum in Support of the accompanying Renewed Motion to Compel.

## I.    OVERVIEW

1.    On November 14, 2011, the Plaintiffs commenced this Adversary Proceeding against the Movants, Anderson Management Services, Inc. ("**Anderson Management**"), Anderson News Company Southwest, LLC ("**Anderson News Southwest**"), Anderson Services, LLC ("**Anderson Services**"), Brookvale Holdings, LLC ("**Brookvale**"), Display Services, Inc. ("**Display Services**"), MSolutions, LLC ("**MSolutions**"), Twin River Technology Group, LLC ("**Twin Rivers**") (collectively, the "**Anderson Defendants**") and Prologix Distribution Services East, LLC ("**Prologix**" and collectively, with the Anderson Defendants, the "**Defendants**").

2.    The Complaint,[2] which relies exclusively upon certain statements contained in the Report of Don A. Beskrone, Esq., Examiner (the "**Examiner's Report**," Bankr. Case Docket No. 852), asserts sixteen causes of action against the Defendants based on Delaware state law and federal bankruptcy law related to certain transfers allegedly made within the four-year period preceding the Debtor's involuntary bankruptcy case.  These causes of action rely upon one or more of the following legal theories:

A.  Contentions that certain of the transfers are avoidable, as alleged constructively fraudulent, under Delaware's Uniform Fraudulent Transfer Act (Del. Code title

---

[1]    Any capitalized term not defined herein shall have the meaning given to it in the attached Discovery Requests.

[2]    D.I. 1.

6, §1301, *et seq.*, **"Delaware UFTA"** or **"DUFTA"**), incorporated by Section 544 of the Bankruptcy Code;

B.   Contentions that certain of the transfers are avoidable, as alleged avoidable transfers to insiders, under DUFTA Section 1305(a);

C.   Contentions that certain of the transfers are avoidable, as alleged constructively fraudulent transfers, under Section 548 of the Bankruptcy Code; and

D.   Contentions that certain of the transfers are avoidable, as alleged preferential transfers, under Section 547 of the Bankruptcy Code.

3.     On May 6, 2014, Movants served the Discovery Requests seeking a narrow band of highly relevant information underpinning the Plaintiffs' claims and the Anderson Defendants' defenses.

4.     On July 7, 2014, the Plaintiffs served Discovery Responses containing answers, objections, and responses to the Discovery Requests.[3]  As described in detail below, Plaintiffs' Discovery Responses fail to satisfy Plaintiffs' obligations under the Federal Rules of Civil Procedure, as made applicable here by the Federal Rules of Bankruptcy Procedure; as Plaintiffs, *inter alia*, have provided non-substantive interrogatory responses and zero (0) documents.[4]  Having recognized that Plaintiffs' Discovery Responses failed to satisfy their obligations, Movants engaged in extensive meet and confer communications and correspondence with Plaintiffs through the latter half of

---

[3]     Plaintiffs' Discovery Responses are attached to the Declaration of Grant T. Stein (the "**Stein Declaration**") (D.I. 209, 211) as Exhibits 5, 6, 7, and 8.

[4]     Although Movants (i) belatedly obtained copies of the documents that the Plaintiffs produced in the Antitrust Action and (ii) obtained a copy of the one document that Time Warner provided to the Examiner, these documents do not satisfy Plaintiffs' discovery obligations to produce all relevant documents to the Discovery Requests.

2014 and January 2015 (on August 1, 8, 14, 21 and 25, September 22, 2014, and January 27, 2015.[5]

5.     On June 11, 2015, the Court conducted a hearing to address a Motion for Summary Judgment brought by AMC, FMC, Anderson News Southwest, Anderson Services, and Brookvale on Count XVI of the Complaint in this Adversary Proceeding (D.I. 195, 196, 200, 201, 202, 204, 224, 225, 228, 229, 230).[6]  In connection with the Court's ruling on the Anderson Defendants' Motion for Summary Judgment, the Court allowed the Examiner to identify the alleged fraudulent transfers that the Plaintiffs had been unable to identify.  As a result, on June 25, 2015, the Examiner identified the actual transfers in Counts VI, VII, XI, and XVI of the Complaint for the first time.  Because the Examiner specifically stated in his report at page 12 that "with the benefit of further investigation, certain of the transfers or amounts thereon identified above as constructively fraudulent may be reduced or eliminated if sufficient information or documentation is produced," the Anderson Defendants undertook an in-depth review of their files for relevant documents.  Commencing on October 9, 2015, and continuing through November 11, 2016, the Anderson Defendants made eight rolling productions to Plaintiffs of the

---

[5]     An informal discussion occurred on February 4, 2015 but did not constitute an additional meet and confer that addressed all of the relief requested herein.

[6]     Additionally, scheduled for that day were a Motion to Modify the Third Amended Scheduling Order filed by the Anderson Defendants (D.I. 206), the Motion to Compel filed on February 5, 2015 by AMC and FMC (D.I. 208), and three related Motions to Compel filed by Anderson Services and Twin Rivers on March 31, 2015 (D.I. 218), and by MSolutions on April 1, 2015 (D.I. 221).  A Motion to Compel filed by the Plaintiffs on May 7, 2015 was also scheduled to be heard (D.I. 238).  These motions were deferred after the Court determined to allow the Examiner to identify the alleged fraudulent transfers that the Plaintiffs had been unable to identify.

documents that backed-up and supported each transfer identified by the Examiner.[7] Thereafter, the Anderson Defendants served two separate supplemental interrogatory responses, on September 1, 2015 and January 9, 2017, including a 501 page supplemental interrogatory response that included (i) traditional interrogatory responses that took into account the fact that the subject transfers had finally been identified and (ii) a 486 page appendix that tied each of the 1369 transfers identified by the Examiner to specific documents included in the eight rolling productions.

6.      Although the Anderson Defendants believed that their eight rolling productions and the two supplemental interrogatory responses satisfied Plaintiffs' Motion to Compel, further meet and confers were held in respect of the Anderson Defendants' discovery responses on February 10, April 18, and May 2, 2017, and the issues were also addressed in emails on January 27, February 3, and April 3, 2017.  Because Plaintiffs had not supplemented their discovery responses or produced any responsive documents (other than simply reproducing limited documentation from the Antitrust Action), the relief requested herein was further raised with the Plaintiffs in telephonic conferences on August 8, 2019 and August 20, 2019, and in emails on August 15, 19, and 27, 2019.

7.      Plaintiffs' continued refusal to provide any substantive and meaningful discovery responses to the Discovery Requests necessitated the filing of this Renewed Motion to Compel.

---

[7]      The eight rolling productions totaled 136,272 records.  Of note, an individual record may constitute multiple pages where, for example, if the record is produced in native (electronic) format.

8.     The Renewed Motion to Compel focuses principally on six (6) remaining and specific areas for which relief is sought.[8]  They are each addressed below and are categorized as follows:

A.     AMC Document Request 3:  Requests that Plaintiffs produce Credit Files (defined below) maintained, obtained, or created by the Plaintiffs related to the Debtor for the period from January 1, 2005 to March 2, 2009.

B.     AMC Document Request 4:  Requests that Plaintiffs produce summaries of transactions with the Debtor.

C.     AMC Document Request 5:  Requests that Plaintiffs produce documents related to potential investment or financial interest in, acquisition of, or the value or valuation of the Debtor.

D.     FMC Interrogatories 7 and 8 and Document Request 1:  Requests that Plaintiffs identify all factoring agreements, unsecured lines of credit agreements, and other documents reflecting the interest rate charged to Plaintiffs on their borrowings.

E.     AMC Interrogatory 12 and Document Requests 1 and 6:  Requests that Plaintiffs identify (and ultimately produce pursuant to a document request) all procedures or course of dealings with respect to the return of unsold magazines.

F.     Plaintiffs' assertion of General Objections that impermissibly try to limit Plaintiffs' discovery obligations.

9.     The first three items (A., B., and C.) and the fifth item (E.)—seeking Plaintiffs' Credit Files on the Debtor, summary reports of transactions with the Debtor, Plaintiffs' investment in and/or valuation of the Debtor, and information concerning Plaintiffs' policies and procedures for the return of unsold magazines—all relate to one fundamental disagreement: whether Plaintiffs' records are relevant to the claims and

---

[8]     Two of the eight requests contained in the original Motion to Compel are not included in the Renewed Motion to Compel because they were resolved as a result of (i) this Court's order allowing the Examiner to identify the actual transfers that the Examiner determined may be avoidable and (ii) the Plaintiffs' production of the documents that they produced in the Antitrust Action.

defenses in the Adversary Proceeding. Plaintiffs contend that they possess no documents relevant to the claims and defenses in the Adversary Proceeding and, thus, are not obligated to produce anything in response to Movants' Discovery Requests.[9] Movants disagree. To be sure, because Plaintiffs' allegations directly implicate the Debtor's solvency and whether the Anderson Defendants had reasonable cause to believe that the Debtor was insolvent, the information sought is discoverable under applicable law. Plaintiffs' internal records and opinions in Plaintiffs' files (documents and information that are not available from any other source) will have relevant, substantive and probative information relating to and necessary to address the questions of balance sheet solvency, whether debts were being paid in the ordinary course, and the reasonableness of Movants' belief that Debtor was not insolvent.

10.    Plaintiffs refusal to substantively respond to the fourth item (D.)—seeking documents and information related to Plaintiffs' factoring agreements, unsecured lines of credit, and interest rates—reflects a similar disagreement regarding the relevance of discoverable information. In their Complaint, Plaintiffs allege that certain financial transactions between the Debtor and certain of the Anderson Defendants should be recharacterized or avoided because they had certain features. In defense, Movants intend to show that Plaintiffs mischaracterize these alleged features and that the Plaintiffs' own financial practices mirrored those of the Debtor. Simply, the fourth item (D.) seeks documents that corroborate and support this defense. Because the Requests seek relevant, discoverable material, the Court should compel the Plaintiffs to respond appropriately.

---

[9]    Plaintiffs do not aver that they have no responsive documents.

11.     The sixth item (F.)—related to Plaintiffs' General Objections—while general in nature, is far reaching.  In Plaintiffs' General Objections, they seek to circumvent their discovery obligations by excluding documents in the possession of their outside counsel (and perhaps, on the same basis, other outside professionals) from the scope of discovery.   Because the Federal Rules of Civil Procedure require parties to produce documents "in their possession, custody, or control," and courts uniformly agree that documents in the possession of a party's outside counsel are within a party's possession, custody, or control, the Plaintiffs' efforts attempt to exclude documents in the possession of their outside counsel should be rejected and they should be compelled to search for and produce documents from all sources in their "possession, custody, or control."   As explained further below, this is not merely conjectural as there are documents known to have been in the possession, custody, and control of the party's outside counsel that have not been produced.

## II.     DISCOVERY REQUESTS AND DISCOVERY RESPONSES

**A.     AMC Document Request No. 3 (Exhibits 2 and 6 attached to the Stein Declaration) – Production of Credit Files maintained, obtained, or created by the Plaintiffs related to the Debtor for the period from January 1, 2005 to March 2, 2009.**

### _Document Request No. 3._

Produce all Credit Files maintained, obtained, or created by the Plaintiffs related to the Debtor for the period from January 1, 2005 to March 2, 2009.  As defined below, Credit Files include any Document or other Communication which reflects, relates or refers to the economic condition of the Debtor or your determination to extend credit or other financial accommodations to the Debtor or otherwise to do business with the Debtor.

### *Plaintiffs' Response to Document Request No. 3.*

> *Plaintiffs object to this Request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further incorporate their General Objections.*

### Argument in Respect of the Motion to Compel on Document Request No. 3

12.     Central to Plaintiffs' claims against the Debtors are contentions concerning: (i) whether the Debtor was solvent; (ii) whether the Debtor was adequately capitalized; (iii) whether there was reasonable cause to believe that the Debtor was insolvent; (iv) whether the Debtor could pay its debts as they came due; and (v) whether the Debtor paid its debts as they came due.  Specifically, Plaintiff's claims under the Delaware UFTA require (i) proof of insolvency for purposes of establishing fraudulent transfers under DUFTA Section 1305(a) and (b), and (ii) for DUFTA Section 1305(b), that "the insider had reasonable cause to believe that the debtor was insolvent."  Further, Delaware UFTA creates a presumption of insolvency under Section 1302(b) <u>only</u> if the debtor is not generally paying its debts. *See* DUFTA Section 1302(b) ("A debtor who is generally not paying debts as they become due is presumed to be insolvent.").  Section 548(a)(1)(B) of the Bankruptcy Code similarly requires proof, as of the date of each transfer, of insolvency or unreasonably small capital or anticipated inability to pay debts as they come due.  Additionally, Section 547(b) of the Bankruptcy Code requires proof of insolvency both as of the date of the transfer and in connection with the requirements of Section 547(b)(5) of the Bankruptcy Code.[10]

---

[10]     While Section 547(f) of the Bankruptcy Code provides a presumption of insolvency for any transfers occurring during the ninety days prepetition, Movants are entitled to discovery to rebut this presumption.  Moreover, the presumption only applies to the ninety days prepetition (and not to any other period implicated by the Complaint).

13.    To prove insolvency under the Bankruptcy Code, Plaintiffs must show that at the time of each challenged transfer the "sum of such entity's debts [was] greater than all of such entity's property, at fair valuation." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 648 (3d Cir. 1991) (quoting 11 U.S.C. §101(31)(A)); *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, No. AP 17-50716, 2019 WL 4261168, at *43-45 & nn. 83, 86, & 87 (Bankr. D. Del. Sept. 6, 2019) (citing numerous cases holding that proof of insolvency under Sections 547 and 548 requires a showing that the debtor's liabilities exceeded the debtor's assets at the time of each transfer).

14.    Defendants may seek to defeat claims asserted against them under DUFTA and Sections 547 and 548 of the Bankruptcy Code through discovery regarding any non-privileged matter that is relevant to any party's claim or defense, including evidence related to (i) whether the Debtor was solvent, (ii) whether the Debtor was adequately capitalized, (iii) whether there was reasonable cause to believe that the Debtor was solvent and could pay debts as they came due and (iv) whether the Debtor paid its debts as they came due.

15.    The Federal Rules of Civil Procedure authorize a defendant to obtain discovery from parties and non-parties.  Here, not only are Plaintiffs parties to this action, they are material creditors holding highly relevant information.  Plaintiffs claim to be the "largest stakeholders in the [Chapter 11] case" and to "hold approximately $149 million in unsecured claims" against the Debtor.[11]  Moreover, during the relevant periods, Plaintiffs extended the Debtor more than a billion dollars of unsecured trade credit.  *See* Examiner's

---

[11]    *See* the Plaintiffs' July 29, 2011 Motion for Derivative Authority, Bankr. Case Docket No. 895 ¶ 4; and Reply of Certain Magazine Creditors in Further Support of Their Motion for an Order Authorizing Examinations Pursuant to Bankruptcy Rule 2004Bankr. Case Docket No. 297 ¶ 2.

Report 225-227.  Accordingly, Movants seek information in the Plaintiffs' possession, custody, or control concerning the Debtor's financial condition and financial viability because such information is relevant to the claims and defenses in this action.[12]

16.    In response to Document Request No. 3 (seeking Plaintiffs' Credit Files), Plaintiffs state without explanation that Document Request No. 3 is "not reasonably calculated to lead to the discovery of admissible evidence."  Although Movants bear the initial burden of demonstrating that Plaintiffs' Credit Files are relevant, courts acknowledge that the hurdle is low.  "[D]iscovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *Miller v. Am. Capital, Ltd. (In re NewStarcom Holdings, Inc.)*, 514 B.R. 394, 399-400 (Bankr. D. Del. 2014) (citations and quotations omitted).

17.    Here, Plaintiffs' objection is not well taken; it cannot be shown that Plaintiffs' Credit Files have no possible bearing upon the subject matter of the action.  As shown above, the essential elements of the relief sought under Delaware UFTA and Sections 547 and 548 of the Bankruptcy Code depend on solvency, valuation, and the reasonable expectations of the parties involved.  The "Credit Files" sought by Document Request No. 3 include Plaintiffs' internal analyses, communications, and documents relating to Debtor's credit worthiness and performance during the one-year insider-

---

[12]    The Plaintiffs argue unpersuasively that a jury would not find relevant and probative third-party/subjective analysis in Plaintiffs' possession showing that the Debtor was (i) satisfying its debts to the Plaintiffs as they came due, (ii) the Plaintiffs determination that the Debtor Anderson News was a zero credit risk, or (iii) the Plaintiffs determination that the Debtor Anderson News was a viable going concern.  This argument has been rejected in *Gordon v. Rogich (In re Alpha Protective Servs., Inc.)*, 593 B.R. 364, 380 (Bankr. M.D. Ga. 2018).

preference period and the four-year fraudulent conveyance period each beginning March 2, 2009.

18.      The Plaintiffs' Credit Files are relevant to solvency for several reasons. First, they will verify the amount of each Plaintiffs' claims at the time of each challenged transfer.  To prove insolvency, Plaintiffs must show that the Debtor's liabilities exceeded its assets at the time of each challenged transfer.  The amount of Plaintiffs' claims per their records may differ from the amounts in the Debtor's records (just as the Plaintiffs' proof of claim amounts differ from the Debtor's scheduled amounts).  Movants are entitled to verify the amount of Plaintiffs' claims on these dates, but they cannot without the requested discovery.

19.      Second, Plaintiffs' Credit Files will confirm whether the Debtor was paying the debts of its most significant creditors when they came due.  Although Movants acknowledge that the Debtor generally stopped paying its debts as due in February 2009, both the Debtor and the Anderson Defendants have maintained that—at all times prior to February 2009—the Debtor was paying its debts as they came due and reasonably expected that it would continue to do so.  This contention challenges any related presumption or showing under DUFTA Section 1302(b) or Section 548(a)(1)(B)(ii)(III) of the Bankruptcy Code.  If Plaintiffs' Credit Files show that they were being paid when their debts became due, this self-authenticating evidence would bear on whether the Debtor was generally paying its debts as they came due.

20.      Relatedly, if, based on correct financial information and market conditions, Plaintiffs' Credit Files reflect Plaintiffs' opinion that the Debtor was a viable going concern and did not present a credit risk, that evidence would have a tendency to make the Debtor's

solvency more probable. It would further provide probative evidence that the Anderson Defendants were reasonable in not having "reasonable cause to believe that the debtor was insolvent" and could continue to pay its debts as they came due as it had previously. The relevancy of third-party credit decisions was confirmed in *Gordon v. Rogich (In re Alpha Protective Services)*, where the court considered similar evidence in determining whether an "insider had reasonable cause to believe that the debtor was insolvent" under the Federal Debt Collection Procedures Act. 593 B.R. 364, 380 (Bankr. M.D. Ga. 2018)(*analyzing* 28 U.S.C. § 3304(a)(2)(B)). In *Alpha Protective Services*, the court rejected the notion that an insider should have known of insolvency during a period where Bank of America was performing due diligence on the debtor and ultimately decided to extend credit to the debtor. *Id.* ("Bank of America's conclusion to lend [the debtor] money is persuasive in determining what conclusions a business person would have made after a reasonable inquiry. . . . [T]he Court does not believe Bank of America would have extend a multi-million-dollar loan to a company the bank believed was insolvent."). Accordingly, the material in the Credit Files is relevant to whether the Debtor was solvent at the time of each challenged transfer, whether the Debtor paid its debts as they came due, and whether there was reasonable cause to believe that the Debtor was solvent and could pay its debts as they came due. This information has far more than a "possible bearing on the subject matter of the action." Accordingly, it must be produced. In this regard, the documents produced in the Antitrust Action, while limited, shed light on the information that would be contained in Plaintiffs' records. *See* TWRAND00036640 (Exhibit 14 attached to the Stein Declaration) in which, among other things, TWR discusses the "█████████████████ ███████████████████████████" and on or about January 14, 2008 said that ██████

████████████████████████████████████████ for the ████████
████████████████████████████████████████████.

21.     The Plaintiffs have also sought to avoid their obligation to produce responsive documents by arguing that the information is in the possession of the Debtor. This argument should be rejected.  The Plaintiffs' internal analysis, communications and documents relating to the Debtor's credit worthiness and performance are not available to the Debtor.  While there may be some limited overlap in the information (e.g., the amounts reflected on Plaintiffs' accounts receivable ledger may mirror the Debtors' accounts payable ledger), as noted above, the Debtors are entitled to verify this information.  More importantly, the most significant items in the Credit Files, such as the Plaintiffs' internal notes and analyses, will not overlap the Debtor's records and are only available from Plaintiffs.  Lastly, in terms of probative value to the trier of fact, the evidence of the strength and vibrancy of the Plaintiffs' own extensive files is exactly the type of evidence that is essential to be produced to provide Movants due process.  *See* TWRAND00036640 (Exhibit 14 attached to the Stein Declaration) cited above.  There is also no undue burden associated with the discovery requested, as the Plaintiffs have not offered any in their prior submissions to this Court.

22.     At bottom, none of the Plaintiffs' arguments provides sufficient basis to withhold relevant and responsive documents.

**B.     AMC Document Request No. 4 (Exhibits 2 and 6 attached to the Stein Declaration) – summaries of transactions with the Debtor.**

### *Document Request No. 4.*

*Produce all Documents that summarize or set forth the transactions between the Debtor and you, including but not limited to summaries of invoices,*

*purchase orders, shipping documents, ledgers, credits, payments, and statements,*

*that are dated between January 1, 2008 and the date of your production of*

*documents in response to these Requests.*

### Plaintiffs' Response to Document Request No. 4.

*Plaintiffs object to this Request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further incorporate their General Objections.*

### Argument in Respect of Plaintiffs' Response to Document Request No. 4

23.    Document Request 4 pertains to *__summaries__* of the transactions between the

Debtor and the Plaintiffs. The Document Request is calculated to minimize the amount of

information produced by requesting only summaries: information that is readily available

in Plaintiffs' accounting records.[13]  Plaintiffs object on the basis that it is "not reasonably

calculated to lead to the discovery of admissible evidence." This objection is invalid for

the reasons explained above with respect to Document Request No. 3.

C.    **AMC Document Request No. 5 (Exhibits 2 and 6 attached to the Stein Declaration) – possible investment or financial interest in, acquisition of, or the value or valuation of the Debtor.**

### Document Request No. 5.

*Produce all Documents maintained, obtained or created by the Plaintiffs*

*that concern, reflect, relate, or refer to the possible investment or financial interest*

*in, acquisition of, or the value or valuation of the Debtor for the period from*

*January 1, 2003 through the date of your production of documents in response to*

*these Requests.*

---

[13]    In an effort to propound narrow discovery requests, Movants sought records reflecting summaries of the transaction between the Debtor and Plaintiffs instead of seeking "all" documents.

### *Plaintiffs' Response to Document Request No. 5.*

*Plaintiffs object to this Request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further incorporate their General Objections.*

### Argument in Respect of Plaintiffs' Response to Document Request No. 5

24.     Document Request 5 seeks documents related to Plaintiffs' interest in the Debtor as a possible investment.  Documents previously produced by Anderson News establish that Time/Warner Retail Sales & Marketing, Inc. (**"Time"**) considered an investment in the Debtor.  Although the Debtor produced certain communications from Time and its counsel related to a potential investment in Anderson News,[14] the Plaintiffs have stated that they have no responsive documents in "their possession."  Plaintiffs' representation is, however, not conclusive because Plaintiffs have limited their search for responsive documents by disclaiming their obligation to seek documents in the possession of their counsel. *See* General Objection No. 7.[15]  This position is unsupported.  *See MTB Bank. v. Fed. Armored Express*, No. 93 Civ. 5594, 1998 U.S. LEXIS 922, at *12 (S.D.N.Y. Feb. 2, 1998) ("Under Fed. R. Civ. P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'"); *Triple Five of Minn. v. Simon*, Inc., 212 F.R.D. 523, 527 (D. Minn. 2002) ("Clearly,

---

[14]     Five sample documents showing Time's interest in a potential investment in Anderson News and a related valuation of Anderson News are attached at Exhibit 15 to the Stein Declaration and have been provided to the Plaintiffs: MBHN00047107, MBHN00047110, MBHN0008287, MBHN0008294, and MBHN0008333.  In particular, MBHN00047107 reflects communications on the subject by counsel for Time.

[15]     "Plaintiffs object to the definition of 'you' and 'your' to the extent that they include Plaintiffs' outside counsel within those definitions. **Plaintiffs have not searched and will not search the files of their outside counsel**." (emphasis added)

Defendants have a legal right to the documents and the ability to obtain the documents from their tax attorneys. Thus, the appraisal information must be produced."). Because the Plaintiffs impermissibly limited their search for responsive documents, they should be compelled to produce all documents responsive to Document Request 5 that are in their possession, custody or control; including, without limitation in the possession of their outside counsel.

### D. <u>First Media Capital Discovery Requests (Exhibits 3, 4, 7, and 8 attached to the Stein Declaration) – Factoring Agreements, Unsecured Lines of Credit, Interest Rates</u>.

25.    The Plaintiffs' responses to the FMC Discovery Requests are similarly deficient.

### *<u>INTERROGATORY NO. 7:</u>*

*Identify each and every factoring agreement entered into by one or more of the Derivative Plaintiffs during the two (2) years preceding and one (1) year following the Petition Date.*

### *<u>PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 7:</u>*

*Plaintiffs object to this Interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also incorporate their General Objections.*

### *<u>INTERROGATORY NO. 8:</u>*

*Identify each and every Document sufficient to show the applicable interest rate and terms for each and every unsecured revolving line of credit entered into by one or more of the Derivative Plaintiffs during the two (2) years preceding and one (1) year following the Petition Date.*

### *PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 8:*

*Plaintiffs object to this Interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs also incorporate their General Objections.*

### *DOCUMENT REQUEST NO. 1:*

*Produce all Documents that reflect, relate or refer to the facts and subject matter requested to be identified in the Interrogatories that were concurrently served on you by First Media Capital Corporation.*

### *PLAINTIFFS' RESPONSE TO DOCUMENT REQUEST NO. 1:*

*Plaintiffs object to the term "reflect, relate or refer to the facts and subject matter requested to be identified in the Interrogatories" as vague, ambiguous, and overbroad.  Plaintiffs further object to the extent that this Request seeks production of privileged or otherwise protected documents or information.  In addition to, subject to, and without waiving the foregoing objections or General Objections, above, Plaintiffs further respond as follows:  See Examiner's Report and all underlying documentation, and in particular, General Objections 10-12.*

### Argument in Respect of Plaintiffs' Response to Interrogatories Nos. 7 & 8 and Document Request No. 1

26.     In Count II of the Complaint, Plaintiffs seek to avoid transfers by the Debtor to FMC totaling more than $14,000,000 on account of certain factored receivables.  To establish the avoidability of these transfers, Plaintiffs assert that the Debtor's sale of receivables to FMC pursuant to factoring agreements between them should be recharacterized as a financing rather than a true sale because, they contend, the Debtor's representation that the conveyed receivables were not subject to set-off establishes that the Debtor retained all risk of loss.

27.     FMC disputes the contention that the factoring transactions were a financing and disputes the contention that the Debtor's retained the risk of loss on account of its limited representations and warranties.  In fact, FMC avers that the reps and warranties

contained in its factoring agreement with the Debtor are standard provisions that do not establish that FMC's purchase of certain receivables was a financing transaction.

28.     To respond to Plaintiffs' contentions and support its defense, Interrogatory 7 seeks factoring and all documents related to Plaintiffs' factoring agreements; including, without limitation, any true sale opinions issued in connection with the factored receivables.  Plaintiffs' factoring agreements and related true sale opinions are relevant to demonstrate to the trier of fact—through examples from the parties in this case—that the representations and warranties contained in the factoring agreements between FMC and the Debtor did not shift the risk of loss to the Debtor or otherwise convert the factoring agreement into a financing.

29.     Plaintiffs' conclusory contention that this interrogatory is not seeking relevant information again ignores critical aspects of the Plaintiffs' claims and evidence that directly implicates those facts.  Specifically, in Plaintiffs' attempt to mischaracterize the FMC factoring as a financing instead of a sale, Plaintiffs complaint implicates the structure of factoring transactions and true sales in the market.  Because certain of the Plaintiffs have entered into any factoring-type transactions,[16] the structure of such are

---

[16]     *See* Exhibit A to the Supplemental Declaration of Grant T. Stein filed contemporaneously herewith, the Time Warner 10-K for the Fiscal Year ended December 31, 2009, p. 112 ("Time Warner has two accounts receivable securitization facilities that provide for the accelerated receipt of up to an aggregate of $805 million of cash on certain available short-term home video and network programming distribution trade accounts receivable. At December 31, 2009, these facilities were fully utilized.  In connection with each of these securitization facilities, subsidiaries of the Company (each a "transferor") sell, on a revolving and nonrecourse basis, their accounts receivable meeting specific criteria ("Pooled Receivables") to a wholly owned special purpose entity ("SPE"). This sale is designed such that the possibility that the transferor or its creditors could reclaim the assets is remote, even in bankruptcy.  The SPE then transfers a percentage interest in these receivables to third-party financial institutions or commercial paper conduits sponsored by financial institutions.  These securitization transactions are accounted for as

directly relevant and probative to this action. The parallel document request seeks these documents. This information should be produced.

30.     Also, such information is relevant because comparable provisions in the Plaintiffs' contracts will require explanation and will bear on establishing that there is a true sale that occurred with the factoring being challenged.

31.     With respect to unsecured lines of credit, these are important because they pertain to interest rates and other terms. The Plaintiffs have challenged the interest rates on the FMC debt, and the imputed interest on the factoring agreements, which makes their comparable agreements relevant, material, and probative on that issue for consideration by the trier of fact in this case.

32.     It should be noted that the inquiries about the factoring agreements and unsecured lines of credit are limited to agreements and documents that existed during the two years preceding and one year following the involuntary petition date of March 2, 2009.

**E.     AMC Interrogatory No. 12 and AMC Document Request No. 1 (Exhibits 1, 2, 5, and 6 attached to the Stein Declaration) - Policies, Procedures, or Course of Dealing with Respect to the Return of Unsold Magazines.**

### *INTERROGATORY NO. 12:*

*Identify each Document that reflects, summarizes or sets forth any and all policies, procedures, or course of dealing with respect to the return of unsold magazines during the four (4) years preceding and one (1) year following the Petition Date.*

---

sales because the Company has relinquished control of the securitized receivables. Accordingly, accounts receivable sold to the SPEs under these facilities are excluded from receivables in the consolidated balance sheet. The Company is not the primary beneficiary with regard to these financial institutions or commercial paper conduits and, accordingly, does not consolidate their operations.").

### *PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 12:*

*Plaintiffs object to the extent this Interrogatory seeks information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Interrogatory as being overbroad, vague, and ambiguous in the absence of an express limitation as to parties or types of magazines. In addition to, subject to, and without waiving the foregoing objections or the General Objections, above, Plaintiffs respond as follows: Plaintiffs reference the Examiner's Report, and all facts and/or documents upon which such facts and conclusions were based. Additional facts and documents of which Plaintiffs are currently unaware and/or of which Plaintiffs do not presently appreciate the significance of may exist, including but not limited to additional facts and documents responsive to discovery requests Plaintiffs served upon one or more Defendants in this action, and Plaintiffs incorporate such facts and documents from Defendants (including those in any supplemental responses or productions, if any) herein. Plaintiffs reserve the right to supplement this response with any additional facts and/or documents they may learn, and/or come to appreciate the significance of, as discovery, and their investigation and review, continue.*

### *DOCUMENT REQUEST NO. 1:*

*Produce all Documents that reflect, relate or refer to the facts and subject matter requested to be identified in the Interrogatories that were concurrently served on you by Anderson Media Corporation.*

### *PLAINTIFFS' RESPONSE TO DOCUMENT REQUEST NO. 1:*

*Plaintiffs object to the term "reflect, relate or refer to the facts and subject matter requested to be identified in the Interrogatories" as vague, ambiguous, and overbroad. Plaintiffs further object to the extent that this Request seeks production of privileged or otherwise protected documents or information. In addition to, subject to, and without waiving the foregoing objections or General Objections, above, Plaintiffs further respond as follows: See Examiner's Report and all underlying documentation, and in particular, General Objections 10-12.*

### Argument in Respect of the Renewed Motion to Compel on Interrogatory No. 12 and Document Request No. 1

33.     Interrogatory 12 asks Plaintiffs to identify documents relating to their policies on the return of unsold magazines. There is a parallel document request that seeks

these documents.  The Plaintiffs object to Interrogatory 12 on the basis that it is "not reasonably calculated to lead to the discovery of admissible evidence."  The Plaintiffs also object on the basis of it being "overbroad, vague, and ambiguous."

34.    The Plaintiffs originally objected to each request related to the Antitrust Action.  Through the meet and confer process and based on the October 3, 2012 Order Requiring Production of Antitrust Discovery (D.I. 119),[17] the Plaintiffs modified their position to be that documents responsive to Interrogatory No. 12 would be produced **but only** to the extent that they were included in the productions made in the Antitrust Action.  This is inadequate.  As explained in the August 14, 2014 communication on this point, "while we have the documents that show the notice to retailers of the change in the return policy with Anderson News, the documents produced do not contain the related internal emails or the actual policies before and after the change.  Examples are CURTIS0008272, CURTIS0008273, KABLE-0000773, and TWRAND00026382."[18]

35.    The information requested in Interrogatory No. 12 is directly relevant to this Adversary Proceeding and to the claims and defenses of both parties, and goes to the question of solvency, the quantum of the Debtor's assets (the value of the magazine inventory), and the quantum of the Plaintiffs' claims against the Debtor's estate.  Valuation for purposes of measuring solvency is a basic part of an avoidance action.  Hon.

---

[17]    As noted earlier, in the Order Requiring Production of Antitrust Discovery, the Court ordered that "(a) Plaintiffs shall produce documents to Defendants in this action simultaneously with any Plaintiffs' production of such documents in the Antitrust Action; and (b) Plaintiffs shall produce to Defendants copies of transcripts of depositions taken in the Antitrust Action when such transcripts become available to Plaintiffs."

[18]    *See* Exhibit 20 to the Stein Declaration.

Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*.[19]    Specifically, documents concerning the Plaintiffs' return policies implicate both the value of the Debtors' assets (e.g., whether and to what extent the amounts payable to the Debtors by retailers should have been reduced by unsold magazines) and the quantum of claims asserted against the Debtors.    *Compare* CURTIS0000050-52 (1/29/09 showing estimated returns of ███████) *with* CURTIS0000472-73 (2/4/09 showing estimated returns of ███████) *with* CURTIS00000000503-05 (2/7/08 showing estimated returns of ███████); *see also* CURTIS0000093 ("███████████████████████████████████████████████████████████████████████████████████████████████████████"); CURTIS0000242 (announcing that "███████████████████████████████████████████████████."); CURTIS0001096 ("███████████████████████████████████████████████████████████████"); and CURTIS0002327 (███████████████████████████████████████████████████).[20]    Based on this sampling of documents from Curtis Circulation Company produced in the Antitrust Action, the Plaintiffs have documents that relate to their policies on the return of unsold magazines but refuse to identify and produce them in response to Movants' Discovery Requests.    As such, the Plaintiffs' response is

---

[19]    20 Am. Bankr. Inst. L. Rev., Spring 2012, at 1, 2-3.

[20]    These documents are attached as Exhibit 21 to the Stein Declaration.

deficient and the Renewed Motion to Compel should be granted and the documents should be ordered to be produced.

F.    **Plaintiffs' General Objections Are Without Merit (Exhibits 5, 6, 7, and 8 attached to the Stein Declaration)**

36.    Plaintiffs' General Objections 10, 11, and 12, and all of their interrogatory responses disavow Plaintiffs' duty to respond to valid discovery requests contending that (i) Plaintiffs purportedly have not concluded their analysis of documents produced in 2010 and 2011, (ii) that the documents already in possession of Plaintiffs "are in the process of being reviewed, and are expected to be the subject of expert testimony in the case," and (iii) other persons may possess the same information.  Even though these objections and responses were invalid when made, now that Plaintiffs have been in possession of voluminous records (in many instances for more than 7 years), they should be compelled to provide supplementary responses that substantively respond to Movants' Interrogatories.

37.    When objecting to a discovery request, the objecting party must make substantial, well-grounded objections with specificity—not with the "familiar litany that an interrogatory or document production request is 'overly broad, burdensome, oppressive and irrelevant.'"[21]  Such boilerplate objections, "without an accompanying affidavit . . . lack the specificity" and have been found to constitute waiver of the objections.[22]

38.    Here, Plaintiffs' General Objections are a textbook example of this "familiar litany" of boilerplate objections.  Plaintiffs have objected to all of the Discovery

---

[21]    *NE Techs., Inc. v. Evolving Sys., Inc.*, CIV.A. 06-6061 (MLC), 2008 WL 4277668 (D.N.J. Sept. 12, 2008) (quoting *Powell v. S. Jersey Marina, Inc.*, 2007 WL 2234513 (M.D. Pa. Aug. 1, 2007)).

[22]    *Id.* (citing *Sabol v. Brooks*, 469 F. Supp. 2d 324 (D. Md. 2006)).

Requests as irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, or some combination thereof.

39.     Missing from all of these objections is any explanation from Plaintiffs as to why each specific request is "irrelevant," "overbroad," "unduly burdensome," "not reasonably calculated to lead to the discovery of admissible evidence," or "ambiguous." No explanation was offered during the meet and confers.  Further, as set forth above with respect to the specific discovery that is the subject of the Renewed Motion to Compel, the discovery is clearly not "irrelevant," "overbroad," "unduly burdensome," "not reasonably calculated to lead to the discovery of admissible evidence," or "ambiguous."

40.     As this court recognized in *CSC Trust Co. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future Holdings Corp.),*[23] "[t]he primary issue for determination before the Court, then, is 'whether the documents and information sought relate to any of the legal or factual issues in dispute.'"[24]  The Court went on to explain that "[B]ecause the standard for relevancy is construed much more loosely in the discovery context than at trial, and because information regarding the EFIH Debtors' solvency reaches the low threshold of having a possible bearing on the subject matter of the action, the Trustee's request for information regarding the EFIH Debtor's solvency must be allowed. (footnotes omitted)"[25]

---

[23]     513 B.R. 651 (Bankr. D. Del. 2014).

[24]     *Id.* at 656 & n.27 (quoting *Pierson v. United States,* 428 F. Supp. 384, 387 (D. Del. 1977); and citing *Smith v. F. T. C.,* 403 F. Supp. 1000, 1004 (D. Del. 1975)).

[25]     *Id.* at 660-61.  Footnote 54 of that opinion further provides: "Any inquiry into the solvency of the EFIH Debtors must include the value of their primary asset, Oncor."  The opinion supports these propositions with the following citations: *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 39 (D. Del. 1993) (quoting *La Chemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164, 171 (D. Del. 1973)). *See also Scuderi v. Boston Ins. Co.*, 34 F.R.D. 463,

41.     As discussed above, the Discovery Requests go to the heart of the claims in the Complaint, and Defendants' defenses.   Thus, they satisfy the "low [relevancy] threshold."

42.     The essential elements of the relief sought under DUFTA and Sections 547 and 548 of the Bankruptcy Code depend on solvency, valuation, and reasonable expectations of the parties involved.   Section 544 which incorporates Delaware UFTA, Del. Code tit. 6, §1301, et seq., requires proof of insolvency for purposes of establishing fraudulent transfers under Section 1305(a) and (b), and for Section 1305(b), that "the insider had reasonable cause to believe that the debtor was insolvent," and also creates a presumption of insolvency under Section 1302(b) ("A debtor who is generally not paying debts as they become due is presumed to be insolvent.").   The discovery propounded by Movants goes to legal or factual issues related to the alleged fraudulent and preferential transfers.

### III.     BASIS FOR REQUESTED RELIEF

#### A.  Applicable Discovery Standard

43.     The Document Requests were served pursuant to Federal Rule 34 incorporated into this Adversary Proceeding by Bankruptcy Rule 7034.  Federal Rule 34(a) provides that "a party may serve on any other party a request within the scope of Rule 26(b)."

---

466 (D. Del. 1964) ("It requires only a reasonable probability of materiality and is not as strict as the standard of relevance at trial.")."

44.     The Interrogatories were served pursuant to Federal Rule 33 incorporated into this Adversary Proceeding by Bankruptcy Rule 7033.  Federal Rule 33(a)(2) provides that an "interrogatory may relate to any matter that may be inquired into under Rule 26(b)."

45.     Federal Rule 26(b)(1) in effect at the time of service of the discovery at issue in this case states:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.
>
> Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

46.     The amendment to Federal Rule 26(b)(1) that took effect on December 1, 2015 modified the rule and states as follows:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> Information within this scope of discovery need not be admissible in evidence to be discoverable

47.     Federal Rule 26(b) incorporates the liberal discovery policy of the Federal Rules and, accordingly, discovery falls within the confines of Federal Rule 26(b) if it seeks

information that relevant.[26]   Additionally, "[a]s long as the information sought is reasonably calculated to lead to the discovery of admissible evidence, it is discoverable, even if it is ultimately not admissible at trial."[27]

48.    "The party resisting discovery has the burden of clarifying, explaining and supporting its objections."[28]   If this burden is satisfied "the burden remains on the discovering party to show that the information sought is relevant to the subject matter of the action."[29]

49.    With respect to the standards adopted and effective in December 2015, there is no legitimate question that the narrow and limited discovery sought in the Discovery Requests is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues. The facts pertaining to this evaluation are addressed in detail above and will not be restated here.  Further, there is no burden or expense associated with the proposed discovery based on the record before the court, and the Plaintiffs have never argued otherwise in recognition of the narrow nature of what is requested, and has been requested, since the start of this

---

[26]    *In re Energy Future Holdings Corp.*, 513 B.R. at 657; *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (relevant discovery "would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.").

[27]    *Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 168 (D. Del. 2010); *In re Energy Future Holdings Corp.*, 513 B.R. at 657 ("The standard for relevancy, however, is construed 'more loosely in the discovery context than at trial.' Federal Rule of Civil Procedure 26(b) clarifies that information need not be admissible in order to still be considered relevant." (citation omitted)).

[28]    *Nestle Foods*, 135 F.R.D. at 104.

[29]    *Nestle Foods*, 135 F.R.D. at 104; *In re Energy Future Holdings Corp.*, 513 B.R. at 657.

case. *See* e.g. D.I. 107 at 32-34, the August 30, 2012 Motion to Compel on the May 9, 2012, First Request for Production of Documents in which both the Credit Files and the Summaries were initially requested. The Court denied the initial motion to compel without prejudice back in 2012, and the need for and entitlement to the information sought has crystalized as set forth in detail above and should be ordered to be produced at this time.

## IV.   <u>CONCLUSION</u>

Plaintiffs' failure to provide a full and complete answer to the Interrogatories and to produce relevant, probative, and material documents that exist and were requested in the Document Requests constitutes a failure to respond to the Discovery Requests that mandates issuance of an order compelling a complete response and production of documents. Without such an order, the Defendants will be denied relevant, discoverable information regarding key factual contentions and factual issues underlying Plaintiffs' claims in this case. Plaintiffs should be ordered to produce the documents responsive to the Document Requests and fully respond to the Interrogatories without further delay.

WHEREFORE, the Movants request that the Court grant the relief sought in the

Renewed Motion to Compel as set forth in the proposed order submitted herewith, and that

the Court grant such other relief as is just and appropriate.

Respectfully submitted, this 23rd day of September, 2019.

OF COUNSEL:

ALSTON & BIRD LLP
Grant T. Stein
David A. Wender
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

KLEHR HARRISON HARVEY
BRANZBURG LLP

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
dpacitti@klehr.com

-and-

Morton R. Branzburg
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 568-6060
Facsimile: (215) 568-6603
mbranzburg@klehr.com

*Counsel to Anderson Media Corporation and
First Media Capital Corporation*