# EXHIBIT G

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ANDERSON NEWS, LLC, | ) Case No. 09-10695 (CSS) |
| Debtor. | ) |
| AMERICAN MEDIA, INC., *et al.*, on behalf of ANDERSON NEWS, LLC, Debtor and Debtor In Possession, | ) |
| Plaintiffs, | ) |
| v. | ) Adv. Proc. No 11 – 53811 (CSS) |
| ANDERSON MANAGEMENT SERVICES, INC., *et al.*, | ) |
| Defendants. | ) |

**SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
PROPOUNDED BY PLAINTIFFS UPON DEFENDANT FIRST MEDIA
CAPITAL CORPORATION**

Plaintiffs American Media, Inc., Bauer Magazine L.P., Bauer Publishing Company, L.P., Heinrich Bauer North American, Inc., Heinrich Bauer Publishing, L.P., Curtis Circulation Company, Kable Distribution Services, Inc., and Time/Warner Retail Sales & Marketing, Inc. hereby propound the following Requests For Production Of Documents (the "RFPs") upon Defendant First Media Capital Corporation (the "Responding Party"). These RFPs are served pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and require a response and production from Responding Party in accordance with the Bankruptcy Rules and the Definitions and Instructions appearing herein after the individual RFPs.

## REQUESTS FOR PRODUCTION

29. All DOCUMENTS constituting or RELATING TO the ORIGINAL FMC NOTE, including but not limited to all drafts of the ORIGINAL FMC NOTE.

30. All DOCUMENTS constituting or RELATING TO the AMENDED FMC NOTE, including but not limited to all drafts of the AMENDED FMC NOTE.

31. All DOCUMENTS constituting or RELATING TO the FMC REVOLVER, including but not limited to all drafts of the FMC REVOLVER.

32. All DOCUMENTS constituting or RELATING TO one or more security agreements RELATING TO, and/or purporting to provide security for, the ORIGINAL FMC NOTE, the AMENDED FMC NOTE, and/or the FMC REVOLVER.

33. All DOCUMENTS constituting or RELATING TO one or more Uniform Commercial Code filings and/or other filings and/or steps taken, if any, to perfect a security interest RELATING TO the ORIGINAL FMC NOTE, the AMENDED FMC NOTE, and/or the FMC REVOLVER.

34. All DOCUMENTS RELATING TO one or more of the FMC REVOLVER PREFERENCE PAYMENTS.

35. All DOCUMENTS RELATING TO whether or not one or more of the FMC REVOLVER PREFERENCE PAYMENTS was made on account of an antecedent debt (as that term is used in Bankruptcy Code § 547(b)(2)).

36. All DOCUMENTS RELATING TO whether or not the DEBTOR was INSOLVENT at the time of one or more of the FMC REVOLVER PREFERENCE PAYMENTS.

37. All DOCUMENTS RELATING TO whether or not YOU had reasonable cause to believe that the DEBTOR was INSOLVENT at the time of one or more of the FMC REVOLVER PREFERENCE PAYMENTS.

38. All DOCUMENTS RELATING TO the FACTORING ARRANGEMENT, including but not limited to all drafts of the FACTORING ARRANGEMENT.

39. All DOCUMENTS RELATING TO any of the FMC FACTORING TRANSACTIONS.

40. All DOCUMENTS RELATING TO any of the FMC FACTORING PREFERENCE PAYMENTS.

41. All DOCUMENTS RELATING TO whether one or more of the FMC FACTORING PREFERENCE PAYMENTS was made on account of an antecedent debt owed by the DEBTOR to YOU.

42. All DOCUMENTS RELATING TO whether one or more of the FACTORING PREFERENCE PAYMENTS was a TRANSFER of the DEBTOR that

3

enabled YOU to receive more than YOU would have received if (a) the DEBTOR's case was a chapter 7 case, (b) the particular FACTORING PREFERENCE PAYMENT had not been made, and/or (c) YOU received payment on account of YOUR claim in accordance with the provisions of the Bankruptcy Code.

43. All DOCUMENTS RELATING TO whether or not the DEBTOR could have borrowed under the SUN TRUST CREDIT FACILITY all the funds that it borrowed from YOU under the FMC REVOLVER.

44. All DOCUMENTS RELATING TO whether or not the interest rate paid by the DEBTOR under the FMC REVOLVER was higher than the interest rate applicable to amounts borrowed under the SUN TRUST CREDIT FACILITY.

45. All DOCUMENTS RELATING TO whether or not YOU received reasonably equivalent value when YOU entered into the obligation under the FMC REVOLVER requiring YOU to pay interest at a higher rate than under the SUN TRUST CREDIT FACILITY.

46. All DOCUMENTS RELATING TO whether or not the DEBTOR could have borrowed under the SUN TRUST CREDIT FACILITY all the funds that it borrowed from YOU under the FACTORING TRANSACTIONS.

47. All DOCUMENTS RELATING TO whether or not the interest rate imputed to the FMC FACTORING TRANSACTIONS was higher than the interest rate applicable to amounts borrowed under the SUN TRUST CREDIT FACILITY.

48. All DOCUMENTS RELATING TO whether or not YOU received reasonably equivalent value when YOU entered into the obligation under the FMC

FACTORING TRANSACTIONS requiring YOU to pay interest at a higher rate than under the SUN TRUST CREDIT FACILITY.

49. All DOCUMENTS that YOU contend and/or believe support, to any extent, the statement in Paragraph 41 of YOUR Answer in THIS ADVERSARY PROCEEDING that "FMC denies the allegations in Paragraph 41 of the Complaint."

50. All DOCUMENTS that YOU contend and/or believe support, to any extent, the statement in Paragraph 62 of YOUR Answer in THIS ADVERSARY PROCEEDING that "Answering further, FMC denies that the Debtor retained 'all risk of loss' with respect to each receivable sold to FMC."

51. All DOCUMENTS that YOU contend and/or believe support, to any extent, the statement in Paragraph 67 of YOUR Answer in THIS ADVERSARY PROCEEDING that "FMC denies that the Debtor is or was insolvent during any relevant time period."

52. All DOCUMENTS that support characterization of the FMC factoring arrangements as "more akin to a revolving line of credit than a 'true sale'" as concluded in the EXAMINER'S REPORT at 208 (and the discussion leading up to that conclusion).

53. All DOCUMENTS that YOU contend or believe support characterization of the FMC factoring arrangements as more akin to a "true sale" than a revolving line of credit, contrary to the conclusion in the EXAMINER'S REPORT at 208 that "the arrangements are more akin to a revolving line of credit than a 'true sale'" (and the discussion leading up to that conclusion).

54. All DOCUMENTS that support the conclusion on page 210 of the EXAMINER'S REPORT that "the affirmative defense under section 547(c)(2) (ordinary course) would not be available to FMC."

55. All DOCUMENTS that YOU contend or believe refute, in whole, in part, and/or in combination with other DOCUMENTS, the conclusion on page 210 of the EXAMINER'S REPORT that "the affirmative defense under section 547(c)(2) (ordinary course) would not be available to FMC."

56. All DOCUMENTS that support the conclusion on page 203 of the EXAMINER'S REPORT that "new value was not extended by FMC following payment of this sum, nor was the payment made in the ordinary course."

57. All DOCUMENTS that YOU contend or believe refute, in whole, in part, and/or in combination with other DOCUMENTS, the statement on page 203 of the EXAMINER'S REPORT that "new value was not extended by FMC following payment of this sum, nor was the payment made in the ordinary course."

58. All DOCUMENTS from which YOU obtained information used in preparing YOUR response to Plaintiffs' first set of Requests For Admissions propounded upon you in THIS ADVERSARY PROCEEDING.

59. All DOCUMENTS that YOU contend or believe support, in whole or in part, one or more denials contained in your response to Plaintiffs' first set of Requests For Admissions propounded upon you in THIS ADVERSARY PROCEEDING.

**DEFINITIONS**

Preliminary note: It is possible that one or more terms defined below might not be used elsewhere herein. Their definitions are maintained here so as to maintain lettering consistency with other discovery requests, for reference purposes.

A. "YOU" and "YOUR" refer to the Responding Party, including any person or entity acting on the Responding Party's behalf in the context of the usage.

B. "THIS ADVERSARY PROCEEDING" means the adversary proceeding styled *American Media, Inc., et al. v. Anderson Management Services, Inc., et al.*, Adv. Proc. No. 11-53811 (CSS), pending in the CHAPTER 11 CASE.

C. "CHAPTER 11 CASE" means the DEBTOR'S chapter 11 case, styled *In re Anderson News, LLC*, Case No. 09-10695 (CSS), pending in the United States Bankruptcy Court for the District of Delaware.

D. "DEBTOR" means Anderson News, LLC, the debtor and debtor in possession in the CHAPTER 11 CASE, before and/or after the PETITION DATE.

E. "COMMUNICATION" means any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person or entity, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, e-mail, instant message, SMS, facsimile, recorded message, or any other process, whether electric, electronic, or otherwise.

F. "DOCUMENTS" means, as broadly as possible consistent with the Bankruptcy Rules, any and all writings and records, including, but not limited to originals

and all copies, unless identical, regardless of origin or location, of written, recorded and graphic matter, however produced or reproduced, formal or informal, including without limitation, correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, e-mails, instant messages, messages, studies, books, circulars, bulletins, instructions, papers, files, minutes, questionnaires, contracts, drafts, agreements, assignments, licenses, ledgers, books of accounts, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgements, data processing cards, photographs, photographic negatives, phonographic records, tape recordings, wire recordings, disc recordings, other electronic or mechanical recordings, transcripts or logs of any such recordings, COMMUNICATIONS preserved in any way, all other data compilations from which information can be obtained or translated, including but not limited to, any information contained in computers, computer discs, computer drivers, tapes, or otherwise generated and/or stored electronically, and any other tangible things of a similar nature, and includes all such material of every kind prepared by, on behalf of, or for, YOU or which at any time was in the actual or constructive possession, custody, or control of YOU and/or any of YOUR agents, employees, affiliates, attorneys, accountants, and/or other persons or entities acting on YOUR behalf, and/or which YOU can locate or discover by reasonably diligent efforts.

G. "EXAMINER'S REPORT" the Report of Don A. Beskrone, Esq., Examiner, dated May 12, 2011, as filed in the Chapter 11 Case (Docket # 852).

H. "TRANSFER" has the meaning given to it in section 101(54) of the BANKRUPTCY CODE.

I.  "INTERCOMPANY POSTING" means one or more of the Intercompany Postings as that term is used in the EXAMINER'S REPORT (in particular in Part II, pages 173-89 thereof), and in the aggregate the term "INTERCOMPANY POSTINGS" includes at least all transactions identified and/or described as Intercompany Postings in Part II of the EXAMINER'S REPORT, pages 173-89.

J.  "BANKRUPTCY CODE" means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

K.  "UFTA" means the Uniform Fraudulent Transfer Act as enacted in Delaware, 6 Del. C. §§ 1301-1313.

L.  "INSOLVENT" means insolvent, as that word is defined in section 101(32) of the Bankruptcy Code and/or in section 1302 of the UFTA.

M.  "PETITION DATE" means March 2, 2009.

N.  "IDENTIFY" and its forms means (1) with respect to a TRANSFER or INTERCOMPANY POSTING, to state the item's date, amount, transferor, transferee, purpose, agreement (if any) pursuant to which it was made, and each DOCUMENT referencing the item; and (2) with respect to a DOCUMENT, to state the DOCUMENT's Bates number if the DOCUMENT has previously been produced (regardless of by whom) connection with THIS ADVERSARY PROCEEDING, the CHAPTER 11 CASE, and/or the preparation of the EXAMINER'S REPORT, and/or is being produced in response to any Request For Production Of Documents propounded upon YOU on or before the date that these RFPs were propounded upon YOU, or if the DOCUMENT has not been or is not being so produced, then to state its creation date, type, author(s), recipient(s), subject matter(s), and location(s) it can be found.

9

O.  "RELATING TO" a stated item, matter, or subject means directly or indirectly mentioning, describing, pertinent to, related to, connected with, or reflecting upon, that stated item, matter, or subject.

P.  "ORIGINAL FMC NOTE" means the Original FMC Note as that term is defined in Paragraph 42 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

Q.  "AMENDED FMC NOTE" means the Amended FMC Note as that term is defined in Paragraph 43 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

R.  "FMC REVOLVER" means the FMC Revolver as that term is defined in Paragraph 42 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

S.  "FMC REVOLVER PREFERENCE PAYMENTS" means the FMC Revolver Preference Payments as that term is defined in Paragraph 45 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

T.  "FACTORING ARRANGEMENT" means the "series of factoring arrangements" referenced on page 204 of Part I of the EXAMINER'S REPORT, including but not limited to any "Bill of Sale Accounts Receivable" (as also referenced on page 204 of Part I of the EXAMINER'S REPORT) RELATING TO any portion of such "series of factoring arrangements," and including but not limited to any agreements pursuant to which any of the referenced factoring arrangements or Bill Of Sale Accounts Receivable were carried out or issued.

U.　"FACTORING TRANSACTIONS" means the Factoring Transactions as that term is defined in Paragraph 59 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

V.　"FMC FACTORING PREFERENCE PAYMENTS" means the FMC Factoring Preference Transactions as that term is defined in Paragraph 59 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

W.　"SUN TRUST CREDIT FACILITY" means the Sun Trust Credit Facility as that term is defined in Paragraph 74 of Plaintiffs' Complaint in THIS ADVERSARY PROCEEDING.

## INSTRUCTIONS

1.　Pursuant to Rule 7034 of the Bankruptcy Rules, YOU are required to respond to the RFPs within 30 days after service hereof.

2.　In responding to the RFPs, YOU shall serve YOUR responses and furnish all responsive DOCUMENTS in YOUR possession, custody, or control and all information available to YOU and/or available to any person or entity acting on YOUR behalf (including but not limited to agents, representatives, and consultants) on counsel to the Plaintiffs, Jeffrey B. Valle, Valle Makoff LLP, 11911 San Vicente Blvd., Suite 324, Los Angeles, California 90049.

3.　In accordance with the Bankruptcy Rules and F.R.Civ.P. 34(b)(2)(E), YOU must either produce DOCUMENTS as they are kept in the usual course of business

11

or must organize and label them to correspond to the categories in the RFPs. Strict compliance with this obligation is required.

4. In producing DOCUMENTS or other data maintained electronically, such information shall be produced in tiff format with extracted metadata. Metadata for e-mail files shall include, to the extent applicable, to (recipient), from (author), cc, bcc, subject, text (e-mail body), sent date, sent time, file format (application or type), information associating the e-mail with its corresponding attachment(s), folder name, and custodian. Metadata associated with other DOCUMENTS shall include, to the extent applicable, the custodian, file name, file size, file type (application), folder name (including available path information), date created, date last modified, and date last accessed. Images shall be produced with optical character recognition (OCR) data to enable full-text searching.

5. If YOU cannot produce all DOCUMENTS responsive to these RFPs after exercising due diligence to secure them, so state and furnish DOCUMENTS to the fullest extent possible, specifying YOUR inability to furnish the remainder and stating whatever information YOU have concerning the unproduced DOCUMENTS. If YOUR response is qualified in any particular manner, fully set forth the details of such qualification.

6. If YOU object to any part of these RFPs and withhold DOCUMENTS based upon such objections, state YOUR objections and produce DOCUMENTS as completely as consistent with any well-founded objections. For example, to the extent YOU believe any RFP is objectionably vague or ambiguous, state YOUR objection, but then state a reasonable understanding of the allegedly vague or ambiguous portion and produce DOCUMENTS in accordance with the RFP as so understood. As another example, to the extent YOU believe an RFP is overbroad, state YOUR objection, but then

state the smallest limitation on the RFP that in YOUR view makes the RFP in YOUR view not overbroad, and produce DOCUMENTS in accordance with the RFP as so limited. Do not withhold DOCUMENTS on the ground that YOU object to the description or characterization of a known item or matter but rather, if YOU believe that the description or characterization of a known item or matter is inaccurate, state what YOU believe is the correct description or characterization and produce DOCUMENTS accordingly.

7. In the event that YOU wish to assert the attorney-client privilege and/or the work product doctrine or any other privilege as to any RFP herein, then, separately for each DOCUMENT withheld pursuant to such assertion, identify (a) the DOCUMENT, (b) the sender(s) and recipient(s) of such DOCUMENT and all copies of such DOCUMENT, (c) the date of the DOCUMENT, (d) the subject matter of the DOCUMENT, (e) the nature of the privilege or doctrine claimed, and (f) the facts or grounds supporting the claim of privilege, in sufficient detail to permit the Court to reach a determination as to the propriety of such assertion.

8. If any DOCUMENT described herein was, but no longer is, within YOUR possession, custody or control, or that of a person or entity acting on YOUR behalf, state in detail: (a) a summary of the contents of the DOCUMENT; (b) what disposition was made of the DOCUMENT; (c) the date of such disposition; (d) the reason for such disposition; (e) whether the original or a copy thereof is within the possession, custody or control of any other person or entity, and (f) if the answer to (e) is affirmative, the identity of that person or entity.

9. In responding to the RFPs, YOU should base YOUR response on, and produce, all information and DOCUMENTS available to YOU, including but not limited to information and DOCUMENTS in the possession of YOUR attorneys, YOUR and their investigators, and/or other persons or entities acting on YOUR behalf. If YOU cannot answer or produce DOCUMENTS in response to any RFP in full after exercising due diligence to secure the information and/or DOCUMENTS sought, then respond and produce DOCUMENTS to the fullest extent possible, specifying YOUR inability to answer and/or produce DOCUMENTS further and stating whatever information or knowledge YOU have concerning any unanswered portions or unproduced DOCUMENTS.

10. If YOU assert lack of information or knowledge as a reason for failure to fully respond to any RFP herein, YOU shall truthfully state that YOU have made a reasonable inquiry and search and the information known to or readily obtained by YOU is insufficient to enable YOU provide additional information or produce any additional DOCUMENTS as to that RFP.

11. The singular form of a word shall also refer to the plural, and vice versa; "including" means including without limitation, and the terms "and," "or," and "and/or" are to be construed, when it makes a difference, so that any particular DOCUMENT is included rather than excluded from the scope of the RFP.

12. These RFPs are continuing in nature, and should YOU discover information of a type addressed by Bankruptcy Rule 7026 and/or F.R.Civ.P. 26(e), YOU shall supplement YOUR responses and production thereto.

13. Notwithstanding anything else herein, any DOCUMENT previously produced to Plaintiffs as a group (not solely in the possession of or available to DEBTOR to the exclusion of Plaintiffs as a group), including through the Examiner, in connection with THIS ADVERSARY PROCEEDING and/or the CHAPTER 11 CASE is excluded from the coverage of these RFPs as to YOU to the extent that YOU identify in YOUR response such previously produced, responsive DOCUMENT by previous Bates number and RFP(s) herein to which it is responsive. Accordingly, any objection that some or all of the requested DOCUMENTS have already been produced to Plaintiffs as a group in connection with THIS ADVERSARY PROCEEDING and/or the CHAPTER 11 CASE would be improper, as the RFPs do not call for any DOCUMENT from YOU that has been so produced or made available again, provided YOU identify it by number and category, which since YOU would not be producing it as maintained in usual course of business YOU would be obligated to do if producing it in the first instance.

Dated: March 18, 2014  
Wilmington, DE

**POTTER ANDERSON & CORROON LLP**

/s/   Jeremy W. Ryan  
Stephen C. Norman (DE Bar No. 2686)  
Jeremy W. Ryan (DE Bar No. 4057)  
Etta R. Wolfe (DE Bar No. 4164)  
Ryan M. Murphy (DE Bar No. 5517)  
Hercules Plaza, 6th Floor  
1313 N. Market Street  
Wilmington, Delaware 19801  
Telephone:  (302) 984-6000  
Facsimile:  (302) 658-1192  
snorman@potteranderson.com  
jryan@potteranderson.com  
ewolfe@potteranderson.com  
rmurphy@potteranderson.com

and

OF COUNSEL:

Jeffrey B. Valle
**VALLE MAKOFF LLP**
11911 San Vicente Blvd., Suite 324
Los Angeles, CA 90049
Telephone: (310) 476-0300
Facsimile: (310) 476-0333
jvalle@vallemakoff.com

*Counsel for American Media, Inc., Bauer Magazine L.P., Bauer Publishing Company, L.P., Heinrich Bauer North American, Inc., Heinrich Bauer Publishing, L.P., Curtis Circulation Company, Kable Distribution Services, Inc., and Time/Warner Retail Sales & Marketing, Inc.*